ROLLIE JOHNSON PLUMBING & HEATING SERVICE, INC., Respondent, v. DEPARTMENT OF TRANSPORTATION (Division of Highways), Appellant.

*No. 11 (1974). Argued September 2, 1975.—*
*Decided December 2, 1975.*
(Also reported in 235 N. W. 2d 528.)

788

For the appellant the cause was argued by *E. Gordon Young,* assistant attorney general, with whom on the briefs was *Robert W. Warren,* attorney general.

For the respondent there was a brief and oral argument by *Vernon Molbreak* of Madison.

DAY, J.   This is an appeal from a judgment rendered on a verdict for $93,000 in a condemnation action.

On December 14, 1971, the Division of Highways of the Department of Transportation of the state of Wisconsin (hereinafter "state") acquired a parcel of land from Rollie Johnson Plumbing & Heating Service, Inc., the plaintiff-respondent (hereinafter "Johnson"). The parcel consisted of 1.83 acres including several buildings. Prior to the acquisition, the state had the property appraised several times. One appraisal, by Philip L. Talty, was made as of July 15, 1970, and valued the property at $86,500. Fred Brown made three different appraisals for the state: On May 15, 1970, $58,750; on March 2, 1971, $59,175; and on November 29, 1971, $57,000. The state adopted Brown's appraisals

and entered into negotiations with Johnson. All of the appraisals were made available to Johnson pursuant to sec. 32.05 (3) (e), Stats.[1] Agreement as to price could not be reached, and the state made its award and acquired the property for $69,500, pursuant to sec. 32.05 (7). Johnson appealed to the circuit court for Dane county, and, after a trial in October, 1973, a verdict was returned by the jury fixing the value at $93,000, and judgment was entered in accordance with the verdict. The state now appeals on the basis of alleged errors and abuses of discretion committed by the trial court during the admission of certain evidence.

Mr. Talty had been a full-time state employee at one time, but was an independent appraiser at the time he was retained by the state to make the Johnson appraisal. The state argues that the jury was prejudiced by statements and testimony which left the inference that the state was dealing unfairly with Johnson by suppressing evidence of Mr. Talty's higher appraisal. It is first alleged that this implication was made by Johnson's counsel during opening argument. However, there is nothing in the record as to what the opening arguments were, and we therefore are in no position to pass on this question.

The state further alleges that Mr. Talty's relationship with the state was brought out in his testimony, when he was called as a witness by Johnson. However, reference to the record shows that he stated that he had been employed as a right-of-way agent for the depart-

---

[1] 32.05 "(3) JURISDICTIONAL OFFER TO PURCHASE. Condemnor shall send to the owner, or one of the owners of record, and to the mortgagee, or one of the mortgagees of each mortgage of record, a notice: . . .

"(e) Stating that the appraisal or one of the appraisals of the property on which condemnor's offer is based is available for inspection at a specified place by persons having an interest in the lands sought to be acquired."

ment of transportation during the period 1966 and 1967, and that he had made appraisals for the department afterwards. He was asked if he had made an appraisal of the Johnson property, and he responded yes, that the appraisal was dated July 15, 1970, that he had the copy, and that the original was with the department. We find nothing in that exchange that could be said to prejudice the jury, since it is not even made clear that the Johnson appraisal was made for the state. In any case, there is no implication that the state acted in bad faith, or that the state was or should have been bound by the higher Talty appraisal, which, of course, it was not.

The state cites other comments in the record regarding Talty's association with the state, and the inference of bad faith that might derive therefrom, but all of such comments took place in chambers, and could not possibly have had any influence on the jury. Nothing in the record indicates that the jury was in any way led to believe that the state had unfairly picked and chosen between appraisals made on the property. While the conversation among the parties in chambers indicated the original intention of Johnson's counsel that Mr. Talty be called to show that the state had not acted in good faith in rejecting his appraisal, this intention was never carried out; Talty's testimony concerned only his appraisal of the property value.

The state also argues that the admission of Mr. Talty's testimony was improper because the appraisal made by him had taken place seventeen months prior to acquisition by the state. *Schey Enterprises, Inc. v. State* (1971), 52 Wis. 2d 361, 190 N. W. 2d 149, held that an appraisal made nine months prior to condemnation was immaterial because the appraiser in that case could not adequately relate the value at the time of the appraisal to the value at the time of the acquisition, and further

because the premature appraisal constituted the state's only evidence as to value of the property. In contrast to *Schey*, in the present case the jury had before it on behalf of Johnson the expert testimony of Mr. Kielisch, as well as that of Mr. Talty. The importance of Mr. Talty's testimony was his opinion that the property had appreciated in value since the time of his $86,500 appraisal. It, along with Mr. Kielisch's $125,000 appraisal, gave the jury a range within which, in the exercise of its judgment, it had the authority to determine the value, which it fixed at $93,000. The jury's figure was approximately halfway between the appraisal of Mr. Kielisch and that of Mr. Brown. Under the definition of "relevant evidence" in sec. 904.01, Stats.,[2] Mr. Talty's testimony, when coupled with that of Mr. Kielisch, was admissible. Mr. Talty's inability to specifically define the amount of property value increase was a matter going to the weight of the evidence.

In addition to Mr. Kielisch's testimony on value, Johnson presented the testimony of Mr. Wayne A. Osterlie, a real estate officer at Security Marine Bank, Madison. He testified that on the basis of the bank's records, in connection with a loan to Johnson, the property in question had been appraised by one Eugene J. Mackesey. On the basis of this appraisal the bank gave Johnson a mortgage loan of $89,000, in accordance with its policy of granting commercial mortgages at approximately 70 percent of appraised value. The state objected to the admission of this testimony both on the basis of hearsay and immateriality.

With respect to the state's hearsay objection, we agree with the trial court that under sec. 908.03 (6),

---

[2] "904.01 **Definition of 'relevant evidence'.** 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Stats.,[3] this was certainly "regularly conducted activity" within the meaning of the statute. The appraisal is an "opinion" and there was no argument that Mr. Mackesey was a person "with knowledge" and that the appraisal was "regularly conducted" part of the mortgage lending process. The admission of opinion evidence in hearsay form is an exception to the hearsay rule under this statute. However, its admission would be subject to the discretion of the trial court. As stated in McCormick, *Evidence* (2d ed.), p. 723, sec. 308, it has been recognized that there is:

". . . a discretionary power in the trial court to exclude evidence which meets the letter of the business records exception but which, under the circumstances, appears to lack the reliability which business records are assumed to ordinarily have."

*See also: Noland v. Mutual of Omaha Ins. Co.* (1973), 57 Wis. 2d 633, 641, 642, 206 N. W. 2d 388.

Here, there was direct testimony that this was not a "moral loan," in the sense that the personal credit of Rollie Johnson entered into the granting of the mortgage, but that it was strictly a commercial mortgage based on a specific percentage of the value of the property. We find no abuse of discretion on the part of the trial court in finding that an appraisal made in connection with the actual lending of the money by a bank

[3] "908.03 **Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . .

"(6) RECORDS OF REGULARLY CONDUCTED ACTIVITY. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances indicate lack of trustworthiness."

may be sufficiently probative of property value to be admissible.

However, we find that the state's objection to Mr. Osterlie's testimony on the basis of immateriality has merit. Under the principle of the *Schey Case, supra,* a mortgage and associated appraisal made approximately two years before acquisition by the state are, standing alone, too remote in time to be admissible as evidence. Evidence of a prior mortgage may be admissible under certain circumstances. 4 Nichols, *Eminent Domain* (3d ed.), p. 12–534, sec. 12.43:

> "The existence of a mortgage on land that is taken by eminent domain is not a relevant factor in the valuation of such land except from the point of view that it is a financial transaction dealing with the land in question and, as such, may reflect upon its value. In view of the fact that the value of real property is a determinative factor in the amount which a mortgagee will lend upon the security of such real property, it would seem that, in the absence of other factors such as the personal credit of the mortgagor or governmental guarantee or insurance against loss, the amount loaned, if it is the maximum which can be loaned, should correlatively reflect the value of the fee."

However, standing in isolation it is subject to the same rule as a prior sale, as was said in *Kamrowski v. State* (1967), 37 Wis. 2d 195, 202, 155 N. W. 2d 125:

> "The general rule regarding admission of comparable sales as direct evidence of value is more restrictive than the admissibility rule when the evidence is offered only to show a basis for the opinion of an expert witness. . . ."

*See also:* 5 Nichols, *Eminent Domain* (3d ed.), p. 18–188, sec. 18.42 (1).

In this case the evidence was not used as the basis of an expert's opinion as to value at the time of acquisition. Standing alone, the lapse of approximately two years

from the time that the Mackesey appraisal was made until the acquisition of this property by the state would make this evidence immaterial under the holding of the *Schey Case.* However, in view of Mr. Kielisch's testimony as to the present value of the land at the time of the acquisition, we do not regard the admission of this evidence as prejudicial to the state.

The state also contests the trial court's refusal to admit into evidence certain photographic slides and a movie depicting the Johnson property and surrounding parcels, offered by the state for the purpose of challenging Mr. Kielisch as to the actual comparability of various parcels to which he referred in his testimony on comparable sales. Counsel for Johnson objected on the ground that the slides and the movie were taken approximately twenty months after the acquisition, during which time substantial changes in the properties occurred. After viewing one of the slides and taking an offer of proof, the trial judge rejected the photographic evidence because of the time gap, and also because it was cumulative with respect to previous testimony.

The trial court's discretion in the area of photographic evidence is particularly broad because of the prejudicial possibilities of photographs. As this court said in *Commerce Ins. Co. v. Badger Paint & Hardware Stores* (1953), 265 Wis. 174, 182, 60 N. W. 2d 747:

"Necessarily considerable is left to judicial discretion at the time of the trial in determining the admissibility of a photograph, and unless there has been an abuse of that discretion resulting in prejudicial error, the matter will not be reviewed by the appellate court."

In addition to the fact that the photographs were taken twenty months later, when considerable development had taken place on the comparable parcels, the court also stated that the comparability of the parcels had been thoroughly gone into during the cross-examination of

Mr. Kielisch. Under these circumstances, and viewing the record in this case, we hold that this matter was within the discretion of the trial court, and find no abuse in the manner in which such discretion was exercised.

The state also attacked the Kielisch appraisal because of his testimony that the Johnson site could be used for unrestricted outdoor storage, when that use was, in fact, prohibited by zoning laws. This was a matter to be pointed out on cross-examination, or explained as a ground for differing evaluation by an expert for the state. At most, it went to the weight of the evidence and was for argument to the jury, rather than to admissibility of the entire Kielisch appraisal.

*By the Court.*—Judgment affirmed.