KUHLMAN, INC., Plaintiff-Respondent, v. G. HEILEMAN BREWING COMPANY, INC., Defendant-Appellant.

*No. 75–770. Submitted on briefs February 8, 1978.—*
*Decided June 6, 1978.*
(Also reported in 266 N. W. 2d 382.)

For the appellant the cause was submitted on the briefs of *Randy J. Smith* of La Crosse.

For the respondent the cause was submitted on the brief of *Robert D. Johns, Jr.,* and *Johns, Flaherty & Gillette, S.C.* of La Crosse.

ABRAHAMSON, J.   This action was instituted by Kuhlman, Inc. (Kuhlman), a corporation engaged in the manufacture, installation, and servicing of industrial refrigeration equipment, to recover from the G. Heileman Brewing Company, Inc. (Heileman) a $6,850.00 unpaid balance on four construction contracts. The parties stipulated that Heileman owed $6,850.00 to Kuhlman on the contracts, subject to Heileman's counterclaims for damages caused by alleged breach of the contracts by Kuhlman.

Three issues were pursued at trial: (1) whether Kuhlman breached two of the contracts by defectively installing equipment at Heileman's Sheboygan plant; (2) if Kuhlman breached the contracts what sum of money would compensate Heileman for the reasonable cost of repairing the defective installations; and (3) what amount listed as "state taxes" in bid tenders submitted by Kuhlman and incorporated by reference into two of the contracts included Wisconsin sales taxes for which Heileman was entitled to reimbursement.

The jury determined that Kuhlman breached the contracts by performing work in a faulty manner, and it

awarded Heileman $114.00 as the reasonable cost of correcting the defects. The jury further determined that no amount of the state taxes set forth in the bid tenders constituted sales taxes. Judgment was entered on the verdict, and Heileman appealed. We reverse and remand the cause for a new trial on the issue of damages at the Sheboygan plant as a result of Kuhlman's breach of contract.

## I.

By its counterclaim, Heileman sought damages for Kuhlman's breach of contract. The measure of the damages sought was the cost incurred by Heileman in repairing Kuhlman's defective installations. *Stevens Construction Corp. v. Carolina Corp.*, 63 Wis.2d 342, 360, 217 N.W.2d 291 (1974). Heileman challenges on appeal the trial court's instructions with regard to Heileman's duty to mitigate these repair costs.

An injured party has a duty to mitigate damages, that is, to use reasonable means under the circumstances to avoid or minimize the damages. An injured party cannot recover any item of damage which could have been avoided. The burden of proof is on the delinquent party to show that the injured party could have mitigated its damages. If the effort, risk, sacrifice or expense which the injured person must incur to avoid or minimize the loss or injury is such that a reasonable person under the circumstances might decline to incur it, the injured party's failure to act will not bar recovery of full damages. *Byrnes v. Metz*, 53 Wis.2d 627, 631, 632, 193 N.W.2d 675 (1972) ; *O'Brien v. Isaacs*, 17 Wis.2d 261, 266, 116 N.W.2d 246 (1962) ; *Monroe County Finance Co. v. Thomas*, 243 Wis. 568, 571, 11 N.W.2d 190 (1943) ; 11 *Williston on Contracts*, sec. 1354 (Jaeger 3d ed. 1968) ; *McCormick, Law of Damages*, sec. 33 *et seq.* (1935).

Whether Heileman exercised reasonable care to mitigate or lessen its costs of repair centers around Heileman's use of its own employees and third-party contractors to make the repairs rather than requesting Kuhlman to make repairs.

There was conflicting testimony as to whether Heileman advised Kuhlman of the defective installations or requested Kuhlman to make repairs. Ronald Kuhlman, Kuhlman's vice-president, testified that had Kuhlman been given the opportunity to make repairs, Heileman would not have been charged for any repairs made necessary by Kuhlman's defective materials or workmanship. Kuhlman would have borne the cost of such repairs, stated the vice-president, because of Kuhlman's warranty of "parts, labor or material supplied." The warranty in the contract provided that:

"We [Kuhlman] will guarantee the Work of the Contract against, and agree to make good, any and all faulty materials and/or workmanship for a minimum period of one year from the date of acceptance by the Engineer."

The contract does not state that Kuhlman will "make good" its warranty by correcting defects. The contract is silent as to whether Heileman was obligated to resort to Kuhlman's services before undertaking other measures to repair defects covered by the warranty.[1] Neither party asked the trial court to interpret the contract to

[1] *See Hammond v. Sandwich Mfg. Co.*, 146 Wis. 485, 487, 131 N.W. 1097 (1911).

Compare a contract which contemplates that the seller's liability for a breach of warranty does not attach until he or she has had an opportunity to remedy the defects. *See, e.g.* a contract stating that the dealer warrants "each part . . . to be free from defects . . . for a period of twelve months from date of delivery . . . . This warranty shall be fulfilled by the Dealer . . . replacing at his place of business, free of charge including related labor, any such defective part." *Lilley v. Manning Motor Co.*, 262 N.C. 468, 137 S.E.2d 847, 849, 850 (1964). *See also Allen v. Brown*, 181 Kan. 301, 310 P.2d 923 (1957); *Rose v. Chrysler Motors Corp.*, 28 Cal. Rptr. 185 (1963).

require Heileman to ask that Kuhlman make the repairs before Kuhlman incurred liability. Whether Heileman had to notify Kuhlman of alleged defects and afford Kuhlman the first opportunity to correct the defects was viewed by the parties and the trial court as an aspect of Kuhlman's affirmative defense that Heileman failed to mitigate damages.

In its instructions to the jury, the trial court characterized as follows Heileman's duty to mitigate its repair costs:

". . . You are further instructed it was the duty of Heileman's to exercise ordinary care to mitigate or lessen its damages. By ordinary care, as that term is here used, is meant that care usually exercised by a person of ordinary intelligence and prudence, under the same or similar circumstances. Heileman's is entitled to avoid loss, to avoid undue risks and to safeguard its product. [*Heileman*] *must ask Kuhlman, Inc. to comply with its warranty unless you are satisfied Kuhlman, Inc., ignored requests of Heileman and that it would be useless to call on them.*

"In fixing damages you will keep in mind this duty of Heileman's to exercise ordinary care to mitigate its damages; and, if you find they did not do so, you should not include in your answer to this question any amount which could have been avoided by the exercise of such care." [Emphasis added]

Heileman claims that the trial court erred in instructing the jury that "[Heileman] *must* ask Kuhlman . . . to comply with its warranty unless . . . Kuhlman . . . ignored requests of Heileman and . . . it would be useless to call on them." [Emphasis added.] The jury should have been instructed, argues Heileman, that Heileman's affording (or failure to afford) Kuhlman an opportunity to correct the defects was one of the factors to be considered in determining whether Heileman exercised ordinary care in seeking to mitigate its damages. The instruction given, asserts Heileman, erroneously placed

upon the injured party, as a matter of law, the duty to ask the breaching party to make repairs. Thus, instead of allowing the jury to determine the reasonable conduct of the injured party under the circumstances, the trial court, in effect, instructed the jury that the only reasonable course of conduct was to seek out Kuhlman to make repairs. Arguing that the trial court's instruction was clearly prejudicial, Heileman points out in its brief that the $114 awarded by the jury, an amount constituting only a small portion of the damages claimed, represented the cost to Heileman of repairing an installation for which there was evidence that Heileman notified Kuhlman of the defects.

Neither party on appeal argues that Heileman was required, as a matter of law, to afford Kuhlman the first opportunity to repair the defective installations. We agree with the parties that Heileman was not required, as a matter of law, to afford Kuhlman the first opportunity to repair the defective installations. We have long applied the rule that the injured party's attempt to mitigate damages must only be "reasonable." *Byrnes v. Metz*, 53 Wis.2d 627, 632, 193 N.W.2d 675 (1972). Because the duty to mitigate damages imposes a standard of reasonable conduct under which a wide latitude of discretion must be given the injured party, McCormick, *Law of Damages*, sec. 35 (1935), the question whether Heileman afforded or failed to afford Kuhlman the opportunity to make the repairs was a factor for the jury to consider in determining whether Heileman exercised ordinary care to mitigate its damages.

Kuhlman argues on appeal that the trial court's mitigation instruction did not, as Heileman contends, place upon Heileman an absolute duty to ask Kuhlman to make repairs, since Heileman need not have done so if its

requests were "ignored" and would be "useless." Kuhlman contends that the phrase "[Heileman] must ask Kuhlman, Inc. to comply with its warranty," viewed in the context of the sentence in which it was used and in the context of the entire instruction, placed upon Heileman only the duty to exercise ordinary care in seeking to mitigate its damages. As Kuhlman points out, "instructions must be judged as a whole and in connection with the questions in the verdict, and unless it can be reasonably said that instructions would probably, not possibly, mislead the jury, prejudicial error should not be found." *Savina v. Wisconsin Gas Co.*, 36 Wis.2d 694, 703, 154 N.W.2d 237 (1967). *See also Menge v. State Farm Mut. Auto. Ins. Co.*, 41 Wis.2d 578, 584, 164 N.W.2d 495 (1969).

Kuhlman claims that the instructions, viewed as a whole, did not mislead the jury. We believe they did. Some errors in an instruction are of such nature that they are not cured by a correct statement of the law elsewhere in the instructions. *Savina v. Wisconsin Gas Co., supra,* at 703. The trial court's statement that Heileman *"must* ask Kuhlman, Inc. to comply with its warranty" was, as Kuhlman contends, modified by the clause "unless you are satisfied Kuhlman, Inc. ignored requests of Heileman and that it would be useless to call on [Kuhlman]," as well as by preceding and subsequent statements that Heileman was under the duty to exercise ordinary care to mitigate or lessen its damages. Nonetheless, these instructions, read together, suggest that while the jury could weigh other conduct to determine its reasonableness, affording Kuhlman first opportunity to repair the defects—unless requests had been "ignored" and it would be "useless"—was, by definition, ordinary care. Kuhlman cites no authority for the proposition that it could only be reasonable to ask someone other than the breaching party to repair warranted defects if

prior requests had been "ignored" and it would be "useless" to call on the warrantor.

Because the jury was probably misled, the trial court's erroneous instruction was prejudicial. *Savina v. Wisconsin Gas Co., supra,* at 703; *Lemberger v. Koehring Co.,* 63 Wis.2d 210, 225, 216 N.W.2d 542 (1974).

## II.

In order to prove the costs it had incurred as the result of the labor expended by its employees on the Kuhlman installations, Heileman sought to introduce an interoffice memorandum which set forth ten instances of Kuhlman's alleged defective workmanship along with composite dollar figures to be charged back to Kuhlman to offset the cost of repairing each defect. These composite figures represented the costs to Heileman of its own employees' labor as well as of the parts and labor supplied by third-party contractors who had repaired certain of the defects. The trial court concluded that the "charge back figures" were "speculative" because the manner in which they had been computed was not specified and that that part of the memorandum which contained the charge back figures was not admissible as a business record. Because Heileman had no other record of the sums representing its employees' labor, the trial court's ruling deprived Heileman of the opportunity to substantiate the costs it had incurred as the result of repairs made by its employees. Because this cause is being remanded and admissibility of the memorandum may arise on retrial, we shall discuss the admissibility of this memorandum.

Heileman contends that the trial court erred in refusing to permit the interoffice memorandum to go to the jury. Heileman claims that the entire memorandum was

admissible pursuant to sec. 908.03(6), Stats., as a "business record," because the memorandum reflected "the logical passage of information in a large-scale business utilizing division of labor."

Section 908.03(6), Stats., provides for the admission of "business records" as follows:

"908.03 Hearsay exceptions; availability of declarant immaterial. The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"...

"(6) RECORDS OF REGULARLY CONDUCTED ACTIVITY. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony of the custodian or other qualified witness unless the sources of information or other circumstances indicate lack of trustworthiness."

Section 908.03(6), Stats., became effective as part of the new Wisconsin Rules of Evidence on January 1, 1974. 59 Wis.2d R1 (1973).

The record contains the following testimony concerning the preparation of the disputed memorandum: Heileman's Sheboygan Brewmaster, who was in charge of maintenance at the Sheboygan plant, testified that he had discovered problems caused by Kuhlman's faulty installations and that he had reported these problems to the Plant Manager. Heileman's Executive Vice-President and its Vice-President of Production testified that the Plant Manager incorporated the information he had received from the Brewmaster into the memorandum in question. Each testified that he had been sent a copy of the Plant Manager's memorandum.

The Brewmaster's report to the Plant Manager had specified the hours of labor expended by Heileman's employees in repairing the defects, along with the hourly

wage paid those employees. The Plant Manager incorporated this information, along with the invoices from the third-party contractors, into the composite sums he had determined should be charged back to Kuhlman to offset the costs of remedying the ten alleged instances of Kuhlman's defective workmanship. The memorandum contained the final charge back figures computed by the Plant Manager, but it did not set forth the underlying computations used to reach the sum total. Thus, from the face of the memorandum it was not possible to determine the number of Kuhlman employees who had engaged in the repair work, the number of hours they had worked, or the wages they had been paid. Because this underlying information had not been preserved and because no one was available to testify at trial as to these facts, the computations which resulted in the charge back figures could not be verified. However, the Executive Vice-President, to whom the memorandum had been written, testified that it was the Plant Manager's responsibility to calculate charge back figures and that he, as Executive Vice-President, customarily relied upon the figures supplied him by the Plant Manager. The Executive Vice-President further testified that all memoranda prepared by Heileman employees are catalogued and filed by Heileman and that the memorandum in question was typical of the memoranda customarily filed by the company.

Kuhlman argued at trial that the memorandum should not be permitted to go to the jury because insofar as it contained the charge back figures, the memorandum "isn't so much a report or a record of data as it is a conclusion in many respects as to what the charge-back will be to Kuhlman. That is just wholly a matter of opinion without any basis in the record." The trial court voiced its concern as follows:

". . . Well, I did say yesterday and the court ruled that this memorandum of Mr. Hann's [the Plant Manager] based on the testimony of Mr. Smith [the Executive Vice-President], that the court would allow that as a business record, however I did say that I would not allow it for the purposes of the back charges because I felt that this was no foundation for that. It looked like it could be anything arbitrary or anything that Mr. Hann wanted to do."

Labeling the charge back information an opinion does not exclude it from admissibility. Sec. 908.03(6) specifically includes opinions, as well as acts, events and conditions, as proper objects of admissible entries. *Rollie Johnson Plumbing v. Dept. of Transportation*, 70 Wis.2d 787, 793, 235 N.W.2d 528 (1975).

Nevertheless, not everything recorded in the course of a regularly conducted activity is admissible pursuant to sec. 908.03(6), Stats. The record must meet the requirements of the section, and an otherwise admissible record may still be excluded if "the sources of information or other circumstances indicate lack of trustworthiness." Sec. 908.03(6), Stats.

It appears from the record before us that the requirements of sec. 908.03(6) could be met. The charge back entries made by the Plant Manager appear to have been made at or near the time of the work; they appear to have been based upon information transmitted to the Plant Manager by people with first-hand knowledge.[2]

---

[2] ". . . that the information be transmitted from a person with personal knowledge to the person making the entry in the course of a regularly conducted activity. Restated, it means that the entry must be based upon information transmitted to the recorder by one with (a) first hand knowledge, and (b) a responsibility to know and report the information . . . . The wording of this section requires personal knowledge transmitted in the course of a 'business duty.' See McCormick s. 310. . . ." Judicial Council Committee's Notes, 59 Wis.2d R271 (1973).

The Plant Manager was himself under a "business duty" to transmit charge back information to the Executive Vice-President who testified as to the records. In the words of the Federal Advisory Committee, all participants "were acting routinely, under a duty of accuracy, with employer reliance on the result, or in short 'in the regular course of business.'" Federal Advisory Committee's Note to Federal Rules of Evidence, reprinted at 59 Wis.2d R273 (1973).

Although the memorandum may meet the requirements of sec. 908.03(6), its admission could be denied by the trial court if "the sources of information or other circumstances" surrounding the preparation of the interoffice memorandum "indicate lack of trustworthiness." This language is broad enough to include many facets of untrustworthiness, *e.g.* the preparant's motive to misrepresent, the failure of the type of record in issue to satisfy the rationale for the exception, and the manner in which the entry was made or kept.

Problems of the motivation of the informant have been a source of difficulty and disagreement. The Federal Advisory Committee Note, *supra*, 59 Wis.2d at R275, comments as follows:

"... In *Palmer v. Hoffman* ... [318 U.S. 109 (1943)], exclusion of an accident report made by the since deceased engineer, offered by defendant railroad trustees in a grade crossing collision case, was upheld. The report was not 'in the regular course of business' ... said the Court. The report was prepared for use in litigating, not railroading. While the opinion mentions the motivation of the engineer only obliquely, the emphasis on records of routine operations is significant only by virtue of impact on motivation to be accurate. Absence of routineness raises lack of motivation to be accurate." *Id.*

Judge Weinstein has noted that cases subsequent to *Palmer v. Hoffman* underscore that the motive to mis-

represent rather than the regular course of business lies at the heart of *Palmer v. Hoffman.* Weinstein & Berger, *Weinstein's Evidence,* par. 803(6)[05] at 803–164 (1975). The Second Circuit has noted that in *Palmer v. Hoffman* "[o]bviously the Supreme Court was concerned about a likely untrustworthiness of materials prepared specifically by a prospective litigant for courtroom use." *United States v. New York Foreign Trade Zone Operation,* 304 F.2d 792, 797 (2d Cir. 1962). This court has voiced the same concern. In *Smith v. Milwaukee & Suburban Transport Corp.,* 33 Wis.2d 269, 275, 147 N.W.2d 233 (1967) we stated:

"A further reason exists why the instant business record, or any testimony by Toebe as to what the record contained, should have been excluded. This is the fact that the entries in the record were made after litigation had been instituted and there existed the possible motive of creating a self-serving record. Thus the element of reliability of such a business record was absent."

Thus under sec. 908.03(6) the trial court has discretionary power to exclude evidence which appears to lack the reliability which business records are assumed to have. *Rollie Johnson Plumbing v. Dept. of Transportation,* 70 Wis.2d 787, 793, 235 N.W.2d 528 (1975). The trial court's decision to admit or exclude the evidence should be based on its weighing of the factors showing untrustworthiness, *e.g.,* existence of motive and opportunity to prepare an inaccurate record, and the factors assuring reliability of business records, *e.g.,* systematic checking, regularity and continuity in maintaining such records which produce habits of precision, and the business' actual reliance on the figures. Federal Advisory Committee's Note to Federal Rules of Evidence, reprinted at 59 Wis.2d at R273.

The trial court's discretion should also be based on the consideration that the rules of evidence favor making

relevant evidence available to the trier of fact and that even if there is the possibility of untrustworthiness the court might admit the evidence and attempt to reduce the dangers of untrustworthiness by a variety of techniques available to it.

". . . If the declarant is available, for instance, the court may insist that he be called if the record is to be used so that his credibility can be examined. If the declarant is unavailable, the court may wish to determine what evidence would be available to attack his credibility pursuant to Rule 806 [Federal Rules of Evidence] if the statement were admitted. The significance of the evidence contained in the record, the availability of other evidence on the point, the degree to which the declarant's bias would be self-evident to the jury and the circumstances in which the record was made, are all factors the court should consider in order to determine whether the need for the evidence outweighs the dangers stemming from its admission. Cf. Rule 403 [Federal Rules of Evidence].[3]

"In short, if the judge finds that the record may be helpful to the jurors and that they should be able to discount its untrustworthy aspects with adequate instructions, the judge should admit the record. Assessment of probative force should, whenever possible, be left for the jury. The jury's function should not be reduced by excluding relevant evidence unless the court is reasonably assured that the result of the litigation will be less reliable if the evidence is revealed to the jury." Weinstein & Berger, *Weinstein's Evidence,* par. 803 (6) [05] at 803–166, 803–167 (1977).

Because we remand on other grounds we need not determine whether in the case at bar prejudicial error was committed by the trial court in excluding the memorandum.

---

[3] Sec. 904.03, Wis. Rules of Evidence is the same as Rule 403 and sec. 908.06, Wis. Rules of Evidence, is substantially similar to Rule 806.

### III.

The bid tender which related to the contract in which Kuhlman agreed to furnish labor and materials for mechanical and electrical work on Heileman's La Crosse yeast room project stated, in pertinent part:

"We hereby tender and agree to furnish all materials and labour required to complete the whole of the Work in accordance with the foregoing Documents for the stipulated sum of: *Twenty-One Thousand Three Hundred Fifty Dollars ($21,350.00)*

This price includes State, Federal and other taxes as follows:

State: $ 400.00
Federal: $
Other: $                (Specify: ————)

This sum includes all applicable sales taxes, duties, brokerage charges and other levies."

The bid tender which related to the contract in which Kuhlman agreed to furnish labor and materials for mechanical and electrical work on Heileman's Sheboygan outdoor tank project stated, in pertinent part:

"We hereby tender and agree to furnish all materials and labour required to complete the whole of the Work in accordance with the foregoing Documents for the stipulated sum of: One Hundred Eighty-Nine Thousand Eight Hundred Thirty Dollars ——————————— Dollars ($189,830.00)

This price includes State, Federal and other taxes as follows:

State: $ 3,050.00
Federal: $
Other: $                (Specify: ————)

This sum includes all applicable sales taxes, duties, brokerage charges and other levies."

The jury returned special verdict question number one as follows:

"QUESTION 1. Of the State Taxes in the amount of $3,450.00 set forth in the tenders signed by Kuhlman, Inc. what amount constituted Wisconsin Sales Taxes? ANSWER: *none*"

In ruling on Heileman's post-verdict motion to set aside the answer to special verdict question number one on the ground that the verdict was contrary to the evidence, the trial court stated:

"This court feels that the answers here were supported by credible evidence, and as a matter of fact, on the state of the record I am inclined to think that insofar as questions one and two were concerned that answers contrary to the ones that were inserted by the jury might have had some difficulty being sustained because of the state of the record."

In the absence of an analysis by the trial court of the evidence supporting the verdict, this court must, on appeal, review the entire record as a matter of first impression. *Ballard v. Lumbermens Mut. Casualty Co.*, 33 Wis.2d 601, 606–07, 148 N.W.2d 65 (1967) ; *Ostreng v. Lowrey*, 37 Wis.2d 556, 560–61, 155 N.W.2d 558 (1968). On the basis of our review, we conclude there is credible evidence to support the jury's verdict that no part of the tax was sales tax.

Kuhlman took the position at trial that none of the $3,450 was sales tax. Ronald Kuhlman, Vice-President of Kuhlman, Inc., the only witness to testify on this issue, explained that the $3,450 inserted related to all state taxes on the project and was a "guestimate" on his part, based on 7 percent of the estimated labor costs. From his testimony one could conclude that he did not understand the purpose of the bid tender clauses, quoted above, which Heileman had drafted and which the trial court viewed as ambiguous. Mr. Kuhlman testified that he

made this "guesstimate" because, as he understood it, Heileman was trying to show how its expansion program was contributing to the tax revenues of the State of Wisconsin.

Mr. Kuhlman further stated that equipment and material supplied to Heileman was exempt from Wisconsin sales tax. However, he also testified that the $3,450 figure included sales tax. He testified that sales tax may have been paid on equipment or material that went into the Heileman contract, because some equipment is ordered in bulk for many contracts and it is not segregated as to taxable and tax exempt jobs. Mr. Kuhlman indicated that it would cost Kuhlman from $200 to $300 in labor costs to go through the accounts to determine on which items of the Heileman contract taxes were paid. He commented that the costs of performing this task were greater than the tax involved.

Heileman's position at trial was that the entire $3,450 constituted sales tax. It attempted to prove this contention by showing that 4 percent (the sales tax rate) of the cost of material and equipment equaled $3,450. Heileman made no real effort to prove that the sales taxes amounted to less than the full amount of $3,450. The only evidence that the sales tax was more than zero and less than $3,450 was Mr. Kuhlman's comment, referred to above, that any sales tax paid on the Heileman contract was less than the cost (estimated at $200–$300) to determine the amount of the tax.

Mr. Kuhlman's testimony was not entirely consistent. On the basis of the record the jury could have concluded that the entire $3,450 constituted sales tax; or it could have concluded that no part of the bid tenders included sales tax; or it could have concluded that some sales tax was included in the $3,450 figure. If the jury chose to believe that a part of the $3,450 was attributable to sales tax, its answer to the special verdict question

still had to be "none." The jury could not determine the dollar amount of sales tax which was more than zero or less than $3,450 from the record. The record does not contain credible evidence which to a reasonable probability demonstrates what part of the $3,450 was attributable to sales taxes. In *De Sombre v. Bickel*, 18 Wis.2d 390, 398, 118 N.W.2d 868 (1963), we said:

".... Neither a court nor a jury as the trier of the facts can determine damages by speculation or guesswork. The trier of the fact may make a reasonable estimate of the damage based on relevant data and evidence .... *Maslow Cooperage Corp. v. Weeks Pickle Co.* (1955), 270 Wis. 179, 70 N.W.(2d) 577. True, some type of damage is difficult of proof but the difficulty does not excuse the failure to put into evidence some reasonable basis of computation. . . ."

Accordingly, we conclude there was credible evidence to support the jury's verdict that none of the $3,450 set forth in the tenders constituted Wisconsin sales taxes.

Insofar as the judgment entered is based on the jury's special verdict finding number 3 (damages to Heileman resulting from Kuhlman's breach of contract) the judgment is reversed and the cause is remanded for a new trial. Heileman asks for a new trial on the issue of damages only; it does not challenge the jury's finding that Kuhlman breached the contract. We cannot so limit the remand because neither the parties nor the jury have specified in what respects Kuhlman breached the contract. On remand the trier of fact cannot determine damages without first determining the nature of Kuhlman's breach in regard to the work at the Sheboygan plant.

*By the Court.*—Judgment reversed and cause remanded for proceedings not inconsistent with this opinion.