COURT OF APPEALS
DECISION
DATED AND FILED

November 10, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2019AP1734**

**STATE OF WISCONSIN**

Cir. Ct. No.  2018CV125

**IN COURT OF APPEALS
DISTRICT III**

---

ELITE CONSTRUCTION CUSTOM HOMES OF APPLETON, LLC,

   PLAINTIFF-RESPONDENT,

 V.

BEE MOUA,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Outagamie County: MITCHELL J. METROPULOS, Judge.  *Affirmed and cause remanded with directions*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Bee Moua appeals a judgment that awarded Elite Construction Custom Homes of Appleton, LLC, $8,685 in damages and $6,752.50 in attorney fees and costs. Moua argues the circuit court erred by: (1) awarding attorney fees to Elite; (2) awarding damages to Elite under the parties' mediation agreement; and (3) concluding Elite did not fail to mitigate its damages. We reject each of Moua's arguments and affirm.

¶2 In addition, we conclude Elite is entitled to recover the attorney fees that it incurred in connection with this appeal. We therefore remand this matter for the circuit court to determine the amount of additional attorney fees that Elite is entitled to recover and to amend the existing judgment to include that amount.

## BACKGROUND

¶3 In June 2017, Elite agreed to complete remodeling and other construction services at Moua's residence. The parties' agreement was memorialized in two written documents: (1) a Homeowner/Contractor Agreement that was required for Moua to obtain a mortgage from Finance of America (the FOA contract); and (2) an Elite Construction Custom Homes of Appleton, LLC Contract (the construction contract).

¶4 As relevant to this appeal, the FOA contract provided: "With respect to the scheduled completion of the work, time is of the essence." The construction contract, in turn, stated: "Should litigation be necessary to enforce Elite Construction's rights arise [sic] under the terms of this Contract, Customers agree to pay Elite Construction's reasonable attorneys' fees and expenses."

¶5 Elite provided labor and materials for the remodeling project at Moua's property. However, disputes arose regarding the quality and timeliness of

Elite's work. Moua therefore terminated the contracts in December 2017 and refused to pay the balance of the contract price.

¶6 In February 2018, Elite filed the instant lawsuit against Moua, asserting claims for breach of contract and unjust enrichment. Moua subsequently asserted counterclaims for breach of contract, breach of warranty of fitness for a particular purpose, professional negligence, and violations of the Wisconsin Administrative Code.

¶7 The parties ultimately mediated their dispute and entered into a mediation agreement dated August 31, 2018. The mediation agreement stated that on or before October 12, 2018, Elite was required to "complete the remodeling project at [Moua's property] in accordance with the contract documents, which includes [the FOA contract], and in accordance with the scope of work identified in the [construction contract]." The agreement specified that the work Elite was required to complete included, but was not limited to, "installation of remaining flooring in the dining room and living room of the property … and installation of countertop materials and baseboard trim."

¶8 The mediation agreement further provided that Elite was entitled to "total remaining disbursements of $14,970.00 from the funds held in the Finance of America Mortgage Company escrow account for Bee Moua." The agreement required Moua to "cooperate with Elite … and its efforts to make draws from the subject escrow account during the course of completion of the foregoing work."

¶9 After the parties signed the mediation agreement, Elite took the position that it would not perform the remaining work until a third draw was paid for work that had already been completed. It is undisputed that Moua did not release the funds for that third draw until October 3, 2018.

¶10     On the same day, Elite's managing member, Jared Schmidt, met with Moua. Schmidt asserts that during that meeting, Moua "demand[ed] that Elite … perform additional work on the residence beyond that agreed to in the Mediation Agreement." Schmidt claims he therefore "prepared a punch list of work that needed completing in order to ensure that the parties agreed on the outstanding work." Based on Moua's comments during the October 3 meeting, Schmidt believed Moua "did not intend to make payment upon [Elite's] completion of the punch list." Schmidt therefore refused to perform any additional work on the project until Moua approved the punch list in writing.

¶11     Elite's attorney filed the proposed punch list with the circuit court on October 5, 2018, and also provided a copy to Moua's attorney. On October 12—the deadline by which the mediation agreement required Elite to complete its work—Moua's attorney emailed Elite's counsel approving the punch list. Moua contends, however, that counsel did so without his permission.

¶12     Elite arrived at Moua's property on October 12 and finished installing the flooring in the living and dining rooms, as required by the mediation agreement. As noted above, the mediation agreement also required Elite to install countertops. The countertops needed to be installed on top of kitchen cabinets. However, on the evening of October 11, Moua and his roommate had moved the kitchen cabinets out of Moua's house and placed them in the garage. Schmidt testified that when he asked Moua where the cabinets were on October 12, Moua told him the cabinets were "not here" and had been "moved off site."

¶13     In contrast, Moua testified he told Schmidt on October 12 that the cabinets were "in storage," but he never used the term "off site" and he never stated the cabinets were not on the property. Moua testified he moved the cabinets into

4

the garage to free up space for Elite to complete its other work. Moua also testified that the cabinets were "very accessible," and it would have taken only a few minutes to move them into the kitchen from the garage.

¶14 Elite did not complete its work by the October 12 deadline set forth in the mediation agreement. Elite blames its failure to do so on Moua's actions—specifically, his delay in approving the punch list and paying the third draw, as well as his "hiding" the cabinets in the garage "to prevent Elite from completing the scope of work." Moua, in turn, asserts that the mediation agreement did not require him to pay the third draw or approve a punch list before Elite began its work. In addition, Moua contends that even if he had not moved the cabinets into the garage, Elite would have been unable to finish all of the required work on October 12.

¶15 On October 13, 2018, Moua fired Elite via email, on the grounds that Elite had failed to complete the required work by the October 12 deadline. Moua's email therefore stated that Elite's services were "no longer accepted and [were] prohibited on [Moua's] property."

¶16 Elite subsequently moved to enforce the parties' mediation agreement, requesting the right to enter Moua's property to complete the required work. In the alternative, Elite asked the circuit court to award it $8,685 in damages—which Elite asserted represented the total amount due under the mediation agreement, less the amount of the third draw and the cost of the work Elite had not completed. Elite also asserted that under the construction contract, it was entitled to recover the attorney fees and costs it had incurred in order to enforce its contractual rights.

¶17 Following a December 14, 2018 hearing on Elite's motion, the circuit court entered an order giving the parties ten days to "attempt to reach agreement on

the punch list of work to be completed according to the terms of the Mediation Agreement." However, the parties were unable to reach an agreement regarding a new punch list.

¶18    Thereafter, in May 2019, Moua filed a supplemental brief in opposition to Elite's motion to enforce the mediation agreement. Moua argued the mediation agreement incorporated the "time is of the essence" clause from the FOA contract. Moua therefore asserted that Elite's failure to complete the work described in the mediation agreement by October 12, 2018, constituted a material breach of that agreement, which permitted Moua to fire Elite. Accordingly, Moua argued that although Elite was entitled to receive the reasonable value of its postmediation work under a quantum meruit theory, it was not entitled to the amount due under the mediation agreement.

¶19    Moua also argued that Elite was not entitled to recover its claimed damages under the mediation agreement because it had failed to mitigate its damages. Finally, Moua argued Elite was not entitled to recover its attorney fees because the mediation agreement did not specifically state that Elite was entitled to those fees and did not incorporate the attorney fee provision from the construction contract.

¶20    Following an evidentiary hearing on Elite's motion to enforce the mediation agreement, the circuit court issued an oral ruling granting Elite's motion. The court found that the amount remaining due under the mediation agreement was $8,685. The court concluded Elite was entitled to recover that amount because Moua had frustrated Elite's ability to perform the work required by the mediation agreement. Specifically, the court found that the "greater weight of the evidence" showed that Moua had "intentionally frustrate[d]" Elite's efforts to install the

kitchen cabinets by removing them from the house and then telling Elite they were "not available." The court further found that Moua had changed his mind about "a number of things" during the course of the project and "would come to agreements, but then he wouldn't want to live up to the agreements." Based on its findings, the court concluded Moua had "really frustrated this entire construction project."

¶21 The circuit court also determined that Elite was entitled to recover the reasonable attorney fees it had incurred in attempting to enforce the mediation agreement. The court subsequently entered a written judgment awarding Elite $8,685 in damages and $6,752.50 in attorney fees and costs. Moua now appeals.

## DISCUSSION

### I. Attorney fees

¶22 Moua first argues that the circuit court erred by awarding Elite attorney fees. Wisconsin adheres to the American Rule, under which parties to litigation are generally responsible for their own attorney fees, unless one of several limited exceptions applies. *Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 2012 WI 70, ¶72, 342 Wis. 2d 29, 816 N.W.2d 853. Moua argues that no such exception applies in this case, and, as a result, there was no basis for the court to award Elite attorney fees.

¶23 An exception to the American Rule exists, however, "where the parties contract for the award of attorney fees." *Id.* Elite argues that exception applies here because the parties' mediation agreement incorporated the attorney fee provision contained in the construction contract. Elite therefore argues it was entitled to recover the reasonable attorney fees it incurred in enforcing the mediation agreement.

7

¶24    We agree with Elite's analysis.  A mediation agreement is a contract, the interpretation of which presents a question of law for our independent review.  *American Nat'l Prop. & Cas. Co. v. Nersesian*, 2004 WI App 215, ¶14, 277 Wis. 2d 430, 689 N.W.2d 922.  When interpreting a contract, we generally seek to give effect to the parties' intentions.  *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶25, 348 Wis. 2d 631, 833 N.W.2d 586.  "We presume the parties' intent is evidenced by the words they chose, if those words are unambiguous."  *Id.*, ¶26 (citation omitted).  Accordingly, "[w]here the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms."  *Id.*

¶25    Here, the mediation agreement states that Elite "shall complete the remodeling project … in accordance with the contract documents."  The term "contract documents" unambiguously refers to the two prior contracts between the parties—i.e., the FOA contract and the construction contract.  As noted above, the construction contract states: "Should litigation be necessary to enforce Elite Construction's rights arise [sic] under the terms of this Contract, Customers agree to pay Elite Construction's reasonable attorneys' fees and expenses."  We agree with Elite that by requiring it to complete the project "in accordance with the contract documents," the mediation agreement incorporated the terms of the construction contract, including the attorney fee provision.  We further agree that the instant lawsuit was necessary to enforce Elite's rights under the construction contract and mediation agreement.  As such, Elite was entitled to recover its reasonable attorney fees.

¶26    Moua argues the mediation agreement does not incorporate the entire construction contract.  He notes that although the mediation agreement states Elite "shall complete the remodeling project … in accordance with the contract documents," it then specifies, "which includes [the FOA contract], and in

8

accordance with the *scope of work* identified in the [construction contract]." (Emphasis added.) Based on that language, Moua argues the mediation agreement incorporates only the scope of work provision from the construction contract, and nothing else.

¶27 We are not persuaded. The wording Moua relies upon does not limit the portions of the contract documents that the mediation agreement incorporates; instead, it clarifies specific provisions of each contract that are included. We agree with Elite that it makes sense the parties would have specifically referenced the scope of work provision from the construction contract because the FOA contract does not contain a scope of work provision and the scope of Elite's remaining work was at issue in the mediation. We further agree with Elite that if the parties had intended the mediation agreement to incorporate only the construction contract's scope of work provision rather than the entire construction contract, they would not have included the broad language stating that Elite was required to complete the project "in accordance with the contract documents."

¶28 Because the mediation agreement incorporates the attorney fee provision from the construction contract, the circuit court properly determined that Elite was entitled to recover its reasonable attorney fees. On appeal, Moua does not argue that the amount of attorney fees the court awarded was unreasonable. We therefore affirm the court's attorney fee award.

## II. Material breach

¶29 Moua next argues the circuit court erred by awarding Elite $8,685 in damages under the mediation agreement. Moua argues the mediation agreement incorporated the "time is of the essence" clause from the FOA contract. Moua therefore argues that Elite's failure to complete the project by October 12, 2018,

was a material breach of the mediation agreement. As a result, Moua argues Elite was not entitled to recover the remaining amount due under the mediation agreement but instead was only entitled "to receive the reasonable value of its post-mediation work, under a quantum meruit theory."

¶30 In response, Elite argues the "time is of the essence" clause in the FOA contract should not be given effect because it fails to set forth any penalty or consequence for Elite's failure to timely perform its contractual obligations. In the alternative, Elite argues that even if time was of the essence of the mediation agreement, the circuit court properly determined that Moua frustrated Elite's performance of its obligations under that agreement, thereby excusing Elite's failure to complete the project by the October 12, 2018 deadline.

¶31 As noted above, the mediation agreement states Elite "shall complete the remodeling project … in accordance with the contract documents," and it then specifies, "which includes [the FOA contract]." We therefore conclude that the mediation agreement incorporated the "time is of the essence" clause from the FOA contract, and we assume without deciding that time was of the essence with respect to the October 12, 2018 deadline in the mediation agreement. Nevertheless, we conclude the circuit court properly determined that Elite's failure to comply with that deadline did not prevent Elite from recovering damages under the mediation

agreement because Moua frustrated Elite's ability to perform its contractual obligations.[1]

¶32    The circuit court made several factual findings in support of its determination that Moua frustrated Elite's performance. Those factual findings are supported by evidence in the record and are not clearly erroneous. *See* WIS. STAT. § 805.17(2) (2017-18).

¶33    The circuit court first found that Moua "changed his mind" about "a number of things" throughout the course of the project. The court relied on the testimony of David Chmielewski, one of Elite's subcontractors, who testified that Moua repeatedly changed his mind about various aspects of Elite's work. For instance, Chmielewski testified that Moua picked out carpeting for the upper floor of the home but later complained that he did not like the color. Chmielewski also testified that Moua pulled up wood laminate flooring after it had been installed and changed his mind about how he wanted the tile flooring laid in the kitchen.

¶34    The circuit court clearly found Chmielewski's testimony credible, and we will not upset that credibility finding on appeal. *See State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345 ("When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony."). In addition,

---

[1] The circuit court framed the issue as whether Moua's actions frustrated Elite's performance of its contractual obligations. The parties have done the same on appeal. Neither the parties nor the circuit court, however, have cited any legal authority recognizing the existence of a doctrine of "frustration of performance" or setting forth the elements of such a doctrine. Nevertheless, Moua does not argue on appeal that the court relied on an erroneous legal theory when it determined that his frustration of Elite's performance excused Elite's failure to timely complete its work. We will not abandon our neutrality to develop that argument on Moua's behalf. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.

Schmidt similarly testified that Moua was "constantly asking for more and more work" and that Moua continued making changes to the project after the parties signed the mediation agreement. Both Schmidt's testimony and Chmielewski's testimony support the court's finding that Moua repeatedly changed his mind about various aspects of Elite's work.

¶35 The circuit court also found that Moua

> tried to act as an expert, a lay expert, and wanted to really impose his own will after having signed the agreement, and then would fire [Elite], would fire the inspector, and then we come to court and then he would come to agreements, but then he wouldn't want to live up to the agreements.

Again, there is ample evidence in the record to support this finding. Moua conceded during the evidentiary hearing that he had attempted to fire the Department of Housing and Urban Development inspector who had been assigned to the project. In addition, the record shows that the mediation agreement required Moua to "cooperate with Elite … and its efforts to make draws from the subject escrow account." Schmidt testified, however, that after the parties signed the mediation agreement, Moua delayed paying the third draw, which in turn delayed Elite's performance of its remaining work. Schmidt's testimony supports the court's finding that Moua failed to comply with his obligations under the mediation agreement by refusing to cooperate with Elite in its efforts to obtain the third draw.

¶36 Schmidt also asserted that he asked Moua to agree to a punch list after the parties signed the mediation agreement because Moua continually changed his mind about various aspects of the project. Schmidt further testified that Moua delayed approving the punch list. Although the mediation agreement did not expressly require Moua to approve a punch list, Moua himself acknowledges that his attorney approved the punch list on October 12, 2018, albeit without Moua's

12

permission. This evidence further supports a finding that Moua failed to timely cooperate with Elite and thus failed to comply with the spirit of the parties' mediation agreement.

¶37 Finally, the circuit court found that on the evening of October 11, 2018, Moua and his roommate "[took] the cabinets into the garage, and then the day of the project they indicate that they're not available, even though they're sitting in the garage and he can get them and the people are there to do it." Once again, the record contains evidence that supports this finding. Moua conceded that the cabinets were moved into the garage before Elite arrived at the property on October 12. Schmidt testified that when he asked Moua where the cabinets were, Moua told him they were "not here" and had been "moved off site." Chmielewski similarly testified that when Schmidt inquired about the location of the cabinets, Moua "said they were not around, he said they were off site, we couldn't get to them. He never once said they were in the garage." Based on this testimony, the court could readily find that Moua moved the cabinets into the garage and then told Elite they were not available for installation on October 12 in order to prevent Elite from completing its work.

¶38 Moua attacks the circuit court's factual findings—particularly its finding regarding the cabinets—by citing evidence in the record that may have supported contrary findings. In so doing, however, Moua ignores our standard of review. Under the clearly erroneous standard, we will affirm the circuit court's findings of fact as long as there is evidence in the record that would permit a reasonable person to make the same findings, even if the record also contains evidence that would support contrary findings. *Reusch v. Roob*, 2000 WI App 76, ¶8, 234 Wis. 2d 270, 610 N.W.2d 168. Here, as explained above, the record

contains evidence that would permit a reasonable person to make the same factual findings as the circuit court. As such, those findings are not clearly erroneous.

¶39 In summary, the circuit court found that Moua repeatedly changed his mind regarding the work to be performed, failed to cooperate with Elite and live up to his obligations under the parties' agreements, and failed to tell Elite that the cabinets were available for installation on October 12, 2018. These findings—which are not clearly erroneous—support the court's conclusion that Moua's actions frustrated Elite's ability to perform its contractual obligations by the October 12 deadline in the mediation agreement. Thus, even if time was of the essence with respect to that deadline, the court properly concluded that Moua's actions excused Elite's failure to complete its work by October 12. We therefore affirm the court's determination that Elite's failure to timely complete the work did not prevent it from recovering damages under the mediation agreement.

## III. Mitigation of damages

¶40 Moua next argues that even if his actions frustrated Elite's ability to timely complete its work, the circuit court should have concluded that Elite was not entitled to recover the amount due under the mediation agreement because it failed to mitigate its damages.[2] Specifically, Moua argues that Elite "could have avoided all loss by negotiating a new punch list and/or simply returning to the jobsite to finish the work."

¶41 "An injured party has a duty to mitigate damages, that is, to use reasonable means under the circumstances to avoid or minimize the damages."

---

[2] As Moua notes, the circuit court did not expressly rule on his argument that Elite failed to mitigate its damages. The court implicitly rejected that argument, however, by awarding Elite the damages it sought under the mediation agreement.

14

*Kuhlman, Inc. v. G. Heileman Brewing Co.*, 83 Wis. 2d 749, 752, 266 N.W.2d 382 (1978). Stated differently, "[a]n injured party cannot recover any item of damage which could have been avoided." *Id.* Critically, however, an injured party is only required to do what is *reasonable* to mitigate its damages. *Langreck v. Wisconsin Laws. Mut. Ins. Co.*, 226 Wis. 2d 520, 524, 594 N.W.2d 818 (Ct. App. 1999). "If the effort, risk, sacrifice or expense which the injured person must incur to avoid or minimize the loss or injury is such that a reasonable person under the circumstances might decline to incur it, the injured party's failure to act will not bar recovery of full damages." *Kuhlman*, 83 Wis. 2d at 752. The delinquent party has the burden to show that the injured party could have mitigated its damages. *Id.*

¶42    Here, Moua has failed to establish that Elite did not use "reasonable means" to avoid or minimize its damages. *See id.* Moua argues that Elite could have minimized its damages by "negotiating a new punch list" after the October 12, 2018 deadline in the mediation agreement elapsed. Schmidt testified, however, that after that deadline elapsed and the circuit court ordered the parties to attempt to negotiate a new punch list, Moua insisted on adding items to the punch list "that were already taken off during our Mediation Agreement." Schmidt further explained that Moua "wanted more work," which Schmidt was unwilling to do for the same price. Based on Schmidt's testimony, the court was entitled to conclude that Elite's refusal to agree to the new punch list proposed by Moua was not unreasonable under the circumstances.

¶43    Moua also asserts that after the October 12, 2018 deadline elapsed, Elite should have simply returned to the job site to finish its work. Moua contends Elite "can hardly argue that it would not have been welcome," as Moua "requested … additional time for reconciliation at the December 14, 2018 hearing."

15

¶44    Be that as it may, Moua has failed to show that Elite's refusal to return to the job site to complete its work was unreasonable under the circumstances. Again, the parties were unable to agree on a punch list after the October 12 deadline in the mediation agreement elapsed. As noted above, Schmidt was unwilling to return to Moua's residence without a punch list because Moua had repeatedly changed his mind about the work he wanted Elite to perform. In addition, the circuit court found that Moua "would come to agreements, but then he wouldn't want to live up to the agreements." Furthermore, we have already upheld the court's determination that Moua intentionally frustrated Elite's performance of its contractual obligations. On these facts, it was not unreasonable for Elite to conclude that its returning to the job site would only have led to further conflict between the parties, rather than a resolution of their disagreements.

¶45    Moua also argues that Elite failed to mitigate its damages "by refusing to sign the $1,350.00 fourth draw for [its] October 12, 2018 work." Again, however, given the contentious history between the parties, it was not unreasonable for Elite to refuse the fourth draw and instead pursue its motion to enforce the parties' mediation agreement.

¶46    Ultimately, for the reasons explained above, we conclude the circuit court properly rejected Moua's mitigation argument and implicitly concluded that Elite's refusal to take the additional actions urged by Moua was reasonable under the circumstances. As such, we reject Moua's argument that Elite failed to mitigate its damages. We therefore affirm the circuit court's award of $8,685 in damages to Elite under the mediation agreement.

**IV. Award of attorney fees incurred on appeal**

¶47     In its respondent's brief on appeal, Elite argues that if we affirm the circuit court's decision, we should remand for the court "to determine additional attorney's fees stemming from this appeal to be added to the existing Judgment." We agree that Elite is entitled to the additional attorney fees it incurred in this appeal. As discussed above, the mediation agreement incorporated the attorney fee provision from the construction contract, which provided that if litigation became necessary for Elite to enforce its contractual rights, Moua would be obligated to pay Elite's attorney fees. We have already determined that, pursuant to that provision, the circuit court properly awarded Elite the attorney fees it incurred below. Elite is the prevailing party in this appeal, and the attorney fees it incurred on appeal were necessary for it to enforce its contractual rights. The mediation agreement therefore entitles Elite to recover its appellate attorney fees.

¶48     In addition, we observe that Elite made a specific request for appellate attorney fees in its respondent's brief, and Moua did not respond to that request in his reply brief. Given Moua's failure to respond to Elite's argument, we deem him to have conceded that if we affirm the circuit court's decision, Elite is entitled to recover its appellate attorney fees. *See **Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded). We therefore remand this case to the circuit court with directions to determine the amount of additional attorney fees that Elite is entitled to recover and to amend the existing judgment to include that amount.

*By the Court.*—Judgment affirmed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).