DEHNART, Respondent, v. WAUKESHA BREWING COMPANY, a/k/a Weber Waukesha Brewing Company, Appellant.

*October 31—November 26, 1963.* ·

586

For the appellant there were briefs by *Lowry, Hunter & Tikalsky* of Waukesha, and oral argument by *Richard N. Hunter.*

For the respondent there was a brief by *Raskin, Zubrensky & Padden,* attorneys, and *Philip L. Padden* and *James L. English* of counsel, and oral argument by *Herbert S. Bratt,* all of Milwaukee.

CURRIE, J.   There being some question as to the appealability of the "order" from which the appeal has been taken we feel it our duty to point out the basis upon which jurisdiction has been assumed.  Although the circuit court rendered an "order," which the parties have assumed is appealable under sec. 274.33, Stats., we are satisfied that the "order" appealed from is in fact an interlocutory judgment within the provisions of sec. 270.54.  The judgment of the circuit court accomplishes exactly what is contemplated by the last sentence of sec. 270.54, which provides:

"In case of a finding or decision substantially disposing of the merits, but leaving an account to be taken, or issue of fact to be decided or some condition to be performed, in order fully to determine the rights of the parties, an interlocutory judgment may be made, disposing of all issues covered by the finding or decision, and reserving further question until the report, verdict or subsequent finding."

Sec. 274.09, Stats., expressly authorizes appeals from interlocutory judgments.

The appeal and motion for review raise these two issues:

(1) Does the arbitration award preclude Weber from asserting, as an affirmative defense to plaintiffs' claims for back wages, that it would have been forced to cease operations for economic reasons long before the collective-bargaining contract expired?

(2) Should unemployment compensation benefits received by plaintiffs subsequent to the breach of contract be offset against plaintiffs' claims for damages?

*Weber's Affirmative Defense.*

Plaintiffs assert two reasons why the circuit court properly struck Weber's affirmative defense. The first is that the arbitrator's award is *res judicata* on the issue raised by the defense. The second is that, inasmuch as the arbitrator found that Weber did not go out of business when it transferred work to Fox Head, it would be no defense to plaintiffs' claims for damages for Weber to prove that without such transfer it would have been forced to cease operations before the contract period ended.

As a general rule the doctrine of *res judicata* is applicable to final awards made by arbitrators. *Park Construction Co. v. Independent School Dist. No. 32* (1943), 216 Minn. 27, 11 N. W. (2d) 649; *Rueda v. Union P. R. Co.* (1946), 180 Or. 133, 175 Pac. (2d) 778; 5 Am. Jur. (2d), Arbitration and Award, p. 628, sec. 147; 6 C. J. S., Arbitration and Award, p. 243, sec. 97. Cf. *Decker v. Ladish-Stoppenback Co.* (1931), 203 Wis. 285, 234 N. W. 355. Thus the decision of this court in *Dehnart v. Waukesha Brewing Co.* (1962), 17 Wis. (2d) 44, 115 N. W. (2d) 490, precludes defendant from attacking the arbitrator's award to the extent that the arbitrator found that defendant breached its employment contract by the transfer of work to Fox Head. The real issue which remains, however, is whether the arbitration award necessarily and properly included a finding that defendant would not have shut down operations prior to the termination date of the collective-bargaining contract. The language of the award which relates to this issue is as follows:

"The . . . employees of Weber Waukesha Brewing Co. . . . who were laid off as the result of the transfer of work from the Weber plant to the Fox Head plant shall be compensated for any earnings lost thereby, *from the time of the layoff to the termination date of the union-management contract now in force* [May 1, 1960] if they should continue to remain laid off, exclusive of any earnings they may have received from employment at the Fox Head brewery since their layoff." (Italics supplied.)

The key words in the above-quoted extract are *"lost thereby."* We interpret these words to be the equivalent of *caused thereby.* If upon trial the facts establish that Weber would have been compelled for economic reasons to close down its operations prior to May 1, 1960, then any earnings plaintiffs had lost from that time to May 1, 1960, would not have been caused by Weber's breach of contract in transferring work to Fox Head. We deem that that portion of the award which mentioned the termination date of the contract served merely to restrict the plaintiffs' damages to the period of the collective-bargaining contract.

Our review of the grievance which was submitted to arbitration and the arbitrator's award disclose that the two issues to which the arbitration extended were: (1) Whether the particular grievance was arbitrable under the provisions of the collective-bargaining contract; and (2) whether the alleged transfer of work by Weber to Fox Head violated this contract so as to entitle the Weber employees to damages "for any earnings lost by them as a result of the transfer." The issue of how the affected employees' damages (lost earnings) were to be computed was not a subject for arbitration. The arbitrator recognized this when he stated in his decision:

"The Union asks in its brief that the Arbitrator retain jurisdiction, if his finding sustained the grievance, *so that the measure of damages may be worked out.* However, the Company is correct in saying that in *ad hoc* arbitration, the

Arbitrator has fulfilled his mission by deciding the matter before him, and it is not in the nature of an equity proceeding wherein jurisdiction may be retained unless the parties agree to it *de novo*." (Italics supplied.)

Plaintiffs rely on the following statements appearing in the arbitrator's decision as demonstrating that the arbitrator did pass on the identical defense, which Weber now has attempted to raise in its affirmative defense:

"The Company insists that the reason for this move was economic, but in the absence of a forced liquidation or voluntary bankruptcy, neither of which certainly can be said to be involved here, a company which agrees with its employees that it will not transfer work from them is not relieved by allegedly poor business from fulfilling the obligation.

". . .

"It may be argued that Weber Waukesha simply gave up the ghost and went out of business. But did it? It is obvious that a mere change in its name could not affect the situation, but it is interesting to note that it still appears as Waukesha Brewing Co. Brewing persists as being indigenous to its very existence. If the transaction goes through; *i.e.* if arrangements can be made with the mortgagee, Waukesha stockholders become the Fox Head stockholders; it is their brew which is being made there, by their executive team which heads their company. The 'Weber' name and goodwill is being and will continue to be used. Their Company still is in existence and it is a brewing concern, if it is any concern."

The only significance which we attach to these last-quoted extracts is that they reflect the arbitrator's answer to Weber's argument that the transfer of work to Weber was not a breach of the collective-bargaining contract because it was forced by economic necessity. If they were to be construed as deciding the issue as to whether plaintiffs' damages in the way of lost earnings could not extend beyond a future date when Weber would have been forced to cease opera-

tions by pressure of economic necessity if Weber had not made the transfer, such a determination would be beyond the scope of the arbitrable issues submitted to the arbitrator. Therefore, it would not be *res judicata* on this latter issue in any event. Restatement, Judgments, p. 326, sec. 71, states:

"Where a court has incidentally determined a matter which it would have had no jurisdiction to determine in an action brought directly to determine it, the judgment is not conclusive in a subsequent action brought to determine the matter directly."

We deem that this principle has equal application to the *res judicata* effect of an arbitrator's award. The Connecticut court in *Local 63, Textile Workers Union v. Cheney Brothers* (1954), 141 Conn. 606, 613, 109 Atl. (2d) 240, held that an arbitrator's award must conform to the submission and is void to the extent it is outside the submission.

If, after a breach of contract occurs by the employer which would entitle affected employees to recover wages lost by reason thereof, the employer is forced by economic reason to shut down, the employees would not be entitled to recover lost earnings for a period subsequent to the date of shutdown. *Town & Country Mfg. Co.* (1962), 136 NLRB No. 111, p. 1022, 49 LRRM 1918; *Roselle Shoe Corp.* (1962), 135 NLRB No. 57, p. 472, 49 LRRM 1516. See also footnote 7, *Phelps Dodge Corp. v. Labor Board* (1941), 313 U. S. 177, 61 Sup. Ct. 845, 85 L. Ed. 1271, 133 A. L. R. 1217, wherein it is stated (p. 199):

"If the business conditions would have caused the plant to be closed or personnel to be reduced, back pay is awarded only for the period which the worker would have worked in the absence of discrimination. *Matter of Ray Nichols, Inc.,* 15 N.L.R.B. 846."

We determine that this same principle should be applicable to a situation such as we have here where, because of the breach, the arbitrator found that Weber's operations were not shut down, but Weber alleges that, if the transfer to Fox Head had not occurred, it would have been forced to shut down prior to the expiration date of its collective-bargaining contract. We find support for this holding in the statement appearing in footnote 13 of *Star Baby Co.* (1963), 140 NLRB No. 67, pp. 678, 684, 52 LRRM 1096 (63 1 CCH NLRB, at page 18,708):

"In this respect, the instant case differs from the type of cases where the record shows that even absent the unfair labor practices, the Respondents would in any event have closed their plant for economic reasons at a subsequent date. See *Myers Ceramics Corp.*, 140 NLRB No. 33 [1962 CCH NLRB § 11,934]. Here, however, the Respondents have made no showing that they would have been compelled to go out of business for economic reasons at any time." [1]

In view of the foregoing we conclude that Weber is entitled to have litigated the issue of whether economic necessity would have forced it to shut down operations at some time after the transfer of work to Fox Head and prior to the termination of the collective-bargaining contract. Therefore, it was error for the circuit court to adjudge that Weber's affirmative defense be stricken.

---

[1] In *Myers Ceramics Co.* (1962), 140 NLRB No. 33, p. 232, the national labor relations board found that the employer violated sec. 8 (a) (3) and (1) of the National Labor Management Relations Act by closing down her plant when the union sought recognition. It also found that even absent this violation the employer might have been forced to close the plant at a subsequent time for economic reasons. Because of this latter finding the board did not order the employer to resume any portion of her business which was not presently in operation.

*Offset of Unemployment Compensation Benefits.*

Plaintiffs rely on *Marshall Field & Co. v. NLRB* (1943), 318 U. S. 253, 63 Sup. Ct. 585, 87 L. Ed. 744, and *NLRB v. Gullett Gin Co.* (1951), 340 U. S. 361, 71 Sup. Ct. 337, 95 L. Ed. 337, in support of their motion for review, in which they seek reversal of that part of the interlocutory judgment which permits the offset of any unemployment compensation benefits received by plaintiffs against their damages. These two cases hold that it was not error for the national labor relations board to refuse to allow employers, who had violated the National Labor Relations Act, to deduct unemployment compensation benefits received by their employees during the period for which the employers were required to pay back pay to such employees.

It is significant that neither the *Marshall Field* nor *Gullett Cases* hold that the national labor relations board has no power to make deductions from such back-pay awards to cover unemployment compensation benefits. This distinction was pointed out in *United Protective Workers v. Ford Motor Co.* (7th Cir. 1955), 223 Fed. (2d) 49, 53, 48 A. L. R. (2d) 1285, in which the court stated:

"In *Marshall Field & Co. v. N. L. R. B.*, 318 U. S. 253, 63 S. Ct. 849, 87 L. Ed. 1165, affirming *N. L. R. B. v. Marshall Field & Co.*, 7 Cir., 129 F. 2d 169, 144 A. L. R. 394, the Supreme Court, held that the words 'net earnings,' as used by the Board in describing what should be deducted from the amount of wages lost did not include state unemployment compensation payments. The Court expressly refrained from deciding whether or not the Board had the power to deduct only 'wages,' because that question had not been raised before the Board. See 29 U. S. C. A. § 160 (e). But later in *N. L. R. B. v. Gullett Gin Co.*, 340 U. S. 361, 71 S. Ct. 337, 95 L. Ed. 337, the Court held that it was within the discretion of the Board to award back pay without deducting unemployment compensation payments received during the period for which the back pay was due.

However, there was no suggestion that the Board could not deduct such compensation payments in any case in which it thought that would best effectuate the purposes of the Act.

"The cases speak only of the National Labor Relations Board's power to award back pay under the Act without deductions of any amounts other than for wages or earnings received during the period. They are not decisive as to the propriety of deductions which should be made in determining the amount of damages in a common law action for damages for the breach of an employment contract."

In *United Protective Workers v. Ford Motor Co., supra,* the employer breached a collective-bargaining contract by compulsory retirement of an employee at age sixty-five, as a result of which the employee received social-security and annuity payments he otherwise would not have received. The United States district court reduced the back-pay damages awarded to the employee by the amount of these social-security and annuity payments and the court of appeals affirmed. The latter court stressed the distinction between damages in tort and contract, noting that damages in tort have a flavor of punishing the tort-feasor. Therefore, in tort it is proper not to give a deduction for collateral payments received from other sources than the tort-feasor.[2]

The fundamental basis for an award of damages for breach of contract is just compensation for losses necessarily flowing from the breach. Restatement, 1 Contracts, pp. 503 *et seq.,* sec. 329; 5 Williston, Contracts (rev. ed.), p. 3762, sec. 1338. It is a corollary of this rule that a party whose contract has been breached is not entitled to be placed in a better position because of the breach than he would have

[2] Wisconsin has recognized this principle in tort actions. *Prunty v. Vanderburg* (1950), 257 Wis. 469, 44 N. W. (2d) 246; *Wasicek v. M. Carpenter Baking Co.* (1923), 179 Wis. 274, 191 N. W. 503; *Cunnien v. Superior Iron Works Co.* (1921), 175 Wis. 172, 184 N. W. 767. See also *Gatzweiler v. Milwaukee E. R. & L. Co.* (1908), 136 Wis. 34, 116 N. W. 633.

been had the contract been performed. *Blair v. United States* (8th Cir. 1945), 150 Fed. (2d) 676, 678; *United Protective Workers v. Ford Motor Co., supra,* at page 53. If the instant plaintiffs were to recover as damages full back pay with interest for the period of employment lost by Weber's breach of contract, without deduction of the unemployment compensation benefits that they received for the same period, they would be placed in a better position than if the contract had not been breached.

Under Wisconsin's Unemployment Compensation Act the benefits paid employees in plaintiffs' position are chargeable directly to the employer's account in the unemployment compensation fund administered by the industrial commission. Sec. 108.03, Stats. After the employer's account in the fund has reached a favorable reserve percentage, the employer's rate of contribution is reduced, and after the reserve percentage reaches 10 percent, he is relieved of further contributions until this reserve percentage is reduced. Sec. 108.18. We take judicial notice of the records of the industrial commission which show that most employers in Wisconsin have built up their accounts to the point where they have a favorable reserve percentage that has either freed them from further contributions for the time being, or has materially reduced their present contribution rate. The effect of payment of extensive benefits is to reduce the employer's reserve percentage and requires increased contributions until a favorable reserve percentage has again been re-established. We mention these facts to demonstrate that the payment of the extensive unemployment benefits to plaintiffs did embody an element of cost to Weber, which is a further reason for sustaining the circuit court's determination in allowing an offset of such benefits.

Plaintiffs cite *Bang v. International Sisal Co.* (1942), 212 Minn. 135, 4 N. W. (2d) 113, and *Billetter v. Posell*

(1949), 94 Cal. App. (2d) 858, 211 Pac. (2d) 621, which disallowed the offsetting of unemployment compensation against back-pay damages awarded for breach of employment contracts. Neither case makes the careful analysis of the problem that was made by the Seventh circuit court of appeals in *United Protective Workers v. Ford Motor Co., supra.* The reason advanced in *Bang v. International Sisal Co., supra,* for disallowing the offset was that unemployment compensation benefits "were intended to alleviate the distress of unemployment, not to diminish the amount which an employer must pay as damages in making whole a wrongfully discharged employe." We have no disagreement with this statement of the underlying objective of unemployment compensation benefits. However, this in itself hardly provides a justifiable reason for disallowing the offset. *Billetter v. Posell, supra,* merely advances the identical reason for allowing the offset that was stated by the Minnesota court in *Bang v. International Sisal Co., supra,* and cites the latter case as authority therefor.

It is our considered judgment that the circuit court properly adjudged that the unemployment compensation benefits received by plaintiffs be offset against plaintiffs' damages.

*By the Court.*—That part of the interlocutory judgment from which appellant appealed is reversed; that part of said judgment as to which plaintiff-respondent moved for review is affirmed; and the cause is remanded for further proceedings not inconsistent with this opinion.