Charles A. KRAMER, Plaintiff-Appellant,†

v.

BOARD OF EDUCATION OF the SCHOOL DISTRICT OF the
MENOMONIE AREA, Defendant-Respondent.

Court of Appeals

*No. 00–3489. Submitted on briefs July 31, 2001.—Decided
September 25, 2001.*

## 2001 WI App 244

(Also reported in 635 N.W.2d 857.)

† Petition to review denied 11-27-01.

334

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Kelly & Ryberg, S.C.* of Eau Claire.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Joel L. Aberg* of *Weld, Riley, Prenn & Ricci, S.C.*, of Eau Claire.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Charles Kramer appeals from a judgment dismissing his claim for damages for breach of an employment contract. Kramer argues that the trial court (1) erroneously concluded that Kramer could

not recover lost wages because he earned more at his higher-paying, subsequent employment during the contract period than he would have earned pursuant to his employment contract; and (2) erroneously granted to Kramer's former employer judgment notwithstanding the jury's verdict that awarded him $16,000 in consequential damages. We conclude that Kramer's damages must be reduced by the amount of wages, benefits and unemployment compensation that he received during the contract period. Because his compensation exceeds his damages, he is not entitled to payment from his former employer. Accordingly, we affirm the trial court on both issues.[1]

## BACKGROUND

¶ 2. The pertinent facts are undisputed. Kramer was employed by the School District of the Menomonie Area from February 1994 until October 1997 under a series of written employment agreements. Kramer's last written employment agreement was for a two-year term, beginning July 1, 1997 and ending June 30, 1999. Before the end of the contract period, Kramer's position was eliminated and he was terminated. His last day of work was October 17, 1997.

¶ 3. Kramer was unemployed until January 5, 1998, when he was hired by the Rhinelander School District, where he remained until June 30, 1998. Since July 1, 1998, Kramer has worked for the Eau Claire School District. During the two-year period covered by Kramer's final contract with the Menomonie District, he received a total of $137,113 in wages, benefits and

---

[1] Because we affirm the trial court on the merits, we do not address the district's argument that Kramer waived the first issue.

unemployment compensation—$46,391 more than he would have received if he had remained with the Menomonie District.

¶ 4. Kramer sued the district, alleging breach of his employment contract. He sought damages including: (1) $6,931 in lost wages for his period of unemployment;[2] (2) $51,780 in lost wages and retirement benefits from being forced to terminate his weekend employment with the army reserves; (3) $3,500 in moving expenses; and (4) $1,500 in miscellaneous expenses.[3]

¶ 5. The trial court granted summary judgment in Kramer's favor on the issue of liability, but concluded a trial was necessary to determine damages.[4] Prior to trial, the court concluded that because Kramer's actual wages during the two-year contract period exceeded those he would have earned had he remained with the Menomonie District, he was barred from recovering lost wages for October 1997 through January 1998. However, the court concluded that any consequential damages resulting from the contract breach would not be reduced by the additional income that Kramer received from his new employment.

¶ 6. The jury awarded Kramer $14,600 for lost army reserve wages and retirement benefits and $1,400 for other incidental losses and expenses. Both parties

---

[2] On appeal, Kramer alleges he is actually entitled to $12,628 for his period of unemployment, which includes both wages and benefits.

[3] Kramer also sought to recover for damage to his reputation and psychological trauma. However, these claims were dismissed before trial and are not at issue on appeal.

[4] Judge Thomas Barland presided over the beginning of this case, including the summary judgment hearing. Judge Lisa Stark was assigned the case shortly before trial.

filed post-trial motions. The district sought (1) judgment notwithstanding the verdict; (2) to change the jury's answers; and (3) a directed verdict and/or dismissal in the district's favor. Kramer sought an increase in the amount of damages awarded, pursuant to WIS. STAT. § 805.15(6) (1999–2000), or, alternatively, judgment pursuant to the verdict, together with costs and disbursements.

¶ 7. The trial court denied all motions except the district's motion for judgment notwithstanding the verdict, which the court granted, explaining that it was reversing its earlier ruling that consequential damages cannot be reduced by Kramer's wages during the contract period.[5] Accordingly, because the jury's $16,000 damage award, combined with the income Kramer would have received had he continued with the Menomonie District, did not exceed his actual income during the two-year contract period, Kramer was not entitled to any damages. The court granted judgment notwithstanding the verdict and dismissed Kramer's claims with prejudice. This appeal followed.

## STANDARD OF REVIEW

¶ 8. Whether Kramer's damages for breach of the employment contract must be reduced by the wages, benefits and unemployment compensation that he received during the two-year contract period presents a question of law we review de novo. *See Handicapped Children's Educ. Bd. v. Lukaszewski*, 112 Wis. 2d 197, 206–07, 332 N.W.2d 774 (1983) (implicitly applying de novo standard of review to determine type of damages

---

[5] Neither party has appealed the trial court's denial of the other post-trial motions, except that Kramer seeks judgment on the verdict, as well as lost wages and benefits totaling $12,628.

available for breach of employment contract). The trial court's decision to grant judgment notwithstanding the verdict is also subject to our independent review. *See Logterman v. Dawson*, 190 Wis. 2d 90, 101, 526 N.W.2d 768 (Ct. App. 1994).

## Discussion

¶ 9. At issue is whether Kramer's damages must be reduced by the amount of financial benefit he received by securing new, more lucrative employment during the contract period. Kramer argues that the practical effect of this reduction, which ultimately resulted in the payment of zero damages, is to penalize him for "over mitigating" his damages and reward his employer for egregious conduct. We reject his argument and affirm.

### A. Principles governing damages for breach of an employment contract

¶ 10. Contract damages compensate the wronged party for damages that arise naturally from the breach. *Hale v. Stoughton Hosp. Ass'n*, 126 Wis. 2d 267, 277, 376 N.W.2d 89 (Ct. App. 1985). The damages are limited by the concept of foreseeability. *Id.* Recovery is limited to damages reasonably supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of a breach. *Id.* at 278.

¶ 11. In addition, a party may seek incidental and consequential damages for breach of contract. *See* WIS JI—CIVIL 3710 (Person damaged by breach of a contract can recover "all losses that are the natural and probable

339

results of the breach."); Wis JI—Civil 3720 (damages include reasonable expenses incident to the contract breach).

■

¶ 12.　Damages awarded to employees for breaches of employment contracts generally are "the salary the employee would have received during the unexpired term of the contract plus the expenses of securing other employment reduced by the income which he or she has earned, will earn, or could with reasonable diligence earn, during the unexpired term." *See Wassenaar v. Panos*, 111 Wis. 2d 518, 534, 331 N.W.2d 357 (1983).[6] However, *Wassenaar* recognized that consequential damages also may be awarded:

---

[6] The district argues that *Wassenaar v. Panos*, 111 Wis. 2d 518, 331 N.W.2d 357 (1983), is inapplicable because it "relates only to 'wrongful discharge' actions and not to breach of contract claims." We interpret this argument to be an assertion that the term "wrongful discharge" refers only to actions alleging a violation of public policy, and that *Wassenaar*'s use of the term renders the case inapplicable here. Without addressing whether the term "wrongful discharge" is appropriate for breach of employment contract actions not involving alleged violations of public policy, we conclude that *Wassenaar*'s discussion of damages is applicable. At issue in *Wassenaar* was the breach of a written employment contract and whether the contract's stipulated damages clause would be enforced. *See id.* at 520. There was no allegation that the employee was terminated for reasons contrary to public policy. *See id.* at 520–21. Similarly, Kramer's action involves the breach of a written employment contract and he has not alleged that he was terminated for reasons contrary to public policy. Therefore, *Wassenaar*'s damages analysis is applicable. We do not address whether our holding today would be equally applicable to cases where discharged employees, with or without written employment contracts, allege that their terminations were contrary to public policy.

In addition to the damages reflected in the black-letter formulation, an employee may suffer consequential damages, including permanent injury to professional reputation, loss of career development opportunities, and emotional stress. When calculating damages for wrongful discharge courts strictly apply the rules of foreseeability, mitigation, and certainty and rarely award consequential damages.

*Id.* at 535.[7]

■■■■

¶ 13. The party alleging breach of the contract has a duty to mitigate damages, that is, "to use reasonable means under the circumstances to avoid or minimize the damages." *See Kuhlman, Inc. v. G. Heileman Brew. Co.*, 83 Wis. 2d 749, 752, 266 N.W.2d 382 (1978); Wis JI—Civil 1731. An injured party cannot recover any item of damage that could have been, or was, avoided. *See Kuhlman*, 83 Wis. 2d at 752; State Bar of Wisconsin, *Wisconsin Employment Law*, § 4.20 (1999) (employer is entitled to a credit to the extent that the former employee obtained work and earned wages, or reasonably might have done so). It is well established that a party is not entitled to be placed in a better position because of a breach than he or she would have if the

---

[7] Commentators have also observed that consequential damages in a breach of employment contract case "are generally considered too speculative to have been within the parties' reasonable contemplation when the employment contract was made." *See* State Bar of Wisconsin, *Wisconsin Employment Law* § 4.18 (1999). Nonetheless, the jury in this case awarded consequential and incidental damages, and the district has not appealed the jury's determination. One of the issues this court must therefore address is whether and to what extent these damages must be reduced by Kramer's other wages, benefits and unemployment compensation during the contract period.

contract had been performed. *See Hanz Trucking, Inc. v. Harris Bros.*, 29 Wis. 2d 254, 268, 138 N.W.2d 238 (1965).

¶ 14. Accordingly, courts have reduced damage awards to employees by the amount of wages earned at subsequent employment during the contract period, as well as by unemployment compensation payments. *See Dehnart v. Waukesha Brewing Co.*, 21 Wis. 2d 583, 594–95, 124 N.W.2d 664 (1963) (plaintiffs may not recover full back pay as damages without deduction of the unemployment compensation benefits they received for the same period because to do so would place them in a better position than if the contract had not been breached).

### B. Claim for wages and benefits during period of unemployment

¶ 15. Kramer disagrees that these contract principles apply. He explains that his claim for wages and benefits is limited solely to his period of unemployment, so subsequent employment during the two-year contract period is irrelevant. Kramer relies on *Smith v. Beloit Corp.*, 40 Wis. 2d 550, 162 N.W.2d 585 (1968), in support of his argument.

¶ 16. *Smith* involved similar, although not identical, facts. Smith did not have a written employment contract, although he had letters confirming his terms of employment. *Id.* at 553, 555. Smith's employment was terminated within three months of hiring. *Id.* at 554. Although he subsequently obtained other employment at a higher salary, he sued for breach of the employment contract. *See id.* at 559–60. The court affirmed a trial court finding that there was sufficient evidence of a one-year employment contract, and that

Smith's discharge constituted a breach of the employment contract. *Id.* at 557–58.

¶ 17. The court then considered the proper measure of damages:

> It seems to us that the proper measuring stick for damages is the actual wage loss and actual expenses of relocation incurred by plaintiff and established by the record.
>
> . . . .
>
> The period of wage loss, actual and full, runs to the date on which he accepted successor employment, incidentally at a rate of compensation somewhat higher than paid him in the position from which he was discharged. There appears to us no dispute that the period of time that the plaintiff was out of work was three and two-thirds months. During this period of time he lost very nearly $2,600 in salary. We fix that as the wage loss incurred, and add to it his moving expenses to the successor job in Milwaukee of $120 and his earlier job searching expenses of $200, both figures being the amount testified to by the plaintiff at the trial. Adding these amounts together, limiting the right to recover damages to the items listed, we reduce the verdict to $2,920 and modify the judgment to set forth this amount as the amount to which plaintiff is entitled as damages.

*Id.* at 559–60.

¶ 18. Kramer argues that like Smith, his period of wage loss ran until the date he accepted successor employment and, therefore, he should be also able to recover damages for his period of unemployment without reducing those damages by his subsequent wages during the contract period. While we agree that *Smith* supports Kramer's argument, we disagree that *Smith* is controlling.

343

¶ 19. In *Wassenaar*, our supreme court recognized that the damage award in *Smith* was at odds with the general rule that requires courts to consider damages and mitigation over the entire contract period. *See Wassenaar*, 111 Wis. 2d at 534–35 n.18. *Wassenaar* limited *Smith* to its unique facts:

> The measure of damages in *Smith* . . . appears inconsistent with the general rule, since the period of wage loss up to the beginning of successor employment was used by the court to fix damages. No deduction was made for earnings for the remainder of the one-year employment period, even though plaintiff's subsequent earnings were noted as slightly higher than wages paid in the position from which he was discharged. However, the court substantially reduced the original jury verdict from $35,000 to $2,920; and no written contract existed fixing a definite term. These distinguishing facts may explain the measure of damages used in the case.

*See Wassenaar*, 111 Wis. 2d at 534–35 n.18.

¶ 20. Even if *Wassenaar* did not explicitly overrule *Smith*, it criticized and limited *Smith*. It is a long-standing rule that where supreme court decisions appear to be inconsistent, or in conflict, we follow the court's most recent pronouncement. *See Krawczyk v. Bank of Sun Prairie*, 203 Wis. 2d 556, 567, 553 N.W.2d 299 (Ct. App. 1996). Applying this rule, we conclude that the method of calculating damages stated in *Wassenaar*, rather than *Smith*, should control.

¶ 21. Pursuant to *Wassenaar*, Kramer is entitled to the salary he would have received during the unexpired term of the contract, plus the expenses of securing other employment, reduced by the income which he earned during the unexpired term. *See Wassenaar*, 111 Wis. 2d at 534. Because it is undisputed that Kramer's

income during the remainder of the unexpired term exceeded his claim for lost wages and benefits during the unemployment period, the trial court correctly concluded that Kramer was not entitled to damages for lost wages and benefits.[8]

## C. Claim for consequential and incidental damages

¶ 22. The jury found that Kramer was entitled to consequential and incidental damages totaling $16,000. The district does not challenge that finding on appeal. Accordingly, the sole remaining issue is whether those consequential and incidental damages should be reduced by Kramer's other income, benefits and unemployment compensation during the contract period.

¶ 23. Like the parties, we were unable to identify a Wisconsin case directly on point, perhaps because consequential damages are so rarely awarded in breach of employment contract cases. In any event, we turn to *Wassenaar*, which appears to most directly address the issue.

¶ 24. Kramer argues that *Wassenaar* supports his position that consequential and incidental damages should not be reduced by other income he earned during the contract period. He notes that *Wassenaar* discussed consequential damages only after it first recited the black-letter law that the employee recovers "the salary the employee would have received during

---

[8] The trial court arrived at this conclusion before trial and did not allow Kramer to present evidence of his claim for wages and benefits at trial. In the alternative, the court could have permitted Kramer to introduce evidence of his total damages, allowed the jury to determine the total damages and then reduced Kramer's total damage award by the amount of his other income, benefits and unemployment compensation. .

345

the unexpired term of the contract plus the expenses of securing other employment reduced by the income which he or she has earned, will earn, or could with reasonable diligence earn, during the unexpired term." *See Wassenaar*, 111 Wis. 2d at 534.

¶ 25. Kramer contends that *Wassenaar*'s failure to include consequential damages in its recitation of the black-letter law "clearly demonstrates that consequential damages are not reflected in the black-letter formation. They are separate and independent damages and are not included in an offset." We disagree.

¶ 26. *Wassenaar* explicitly recognized that consequential damages are rarely awarded. Consistent with this observation, *Wassenaar* did not include references to consequential damages in its general statement about the damages awarded to employees for breaches of employment contracts. However, *Wassenaar* did recognize that when calculating damages for wrongful discharge, courts strictly apply the rules of foreseeability, mitigation, and certainty to all damage claims, including claims for consequential damages. *See id.*

¶ 27. If we apply the rule of mitigation to Kramer's incidental and consequential damage claims, we are led to the inescapable conclusion that Kramer's damages must be reduced to the extent he has mitigated his damages by earning other income during the contract period. We are unpersuaded by the proposition that mitigation of one type of damage should be used to reduce only that same type of damage (*e.g.,* wages lost can be reduced only by wages earned). Indeed, *Dehnart* reduced the employee's lost wages by the amount of unemployment compensation received. *See Dehnart*, 21 Wis. 2d at 595.

¶ 28. We recognize that it is uncommon for an employee to so successfully mitigate damages that the

employee is entitled to no damages for breach of the employment contract. This is one such case. To award Kramer consequential and incidental damages without reducing those damages by his income during the contract period would be to put him in a better position because of the breach than he would have if the contract had been performed, which is contrary to the basic principles of contract law. *See Hanz Trucking*, 29 Wis. 2d at 268.

¶ 29. Accordingly, we agree with the trial court that the consequential and incidental damage award should be reduced by Kramer's income during the contract period. Because it is undisputed that the jury's $16,000 damage award, combined with the income Kramer would have received had he continued with the Memoninee District, did not exceed his actual income during the two-year contract period, Kramer was not entitled to any damages. Therefore, the trial court did not err when it granted judgment to the district notwithstanding the verdict.

*By the Court.*—Judgment affirmed.

OFFICIAL WISCONSIN REPORTS

International Paper Co. v. Labor & Indus. Rev. Com'n, 248 Wis. 2d 348