COURT OF APPEALS
DECISION
DATED AND FILED

July 28, 2020

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If
published, the official version will appear in
the bound volume of the Official Reports.

A party may file with the Supreme Court a
petition to review an adverse decision by the
Court of Appeals. *See* WIS. STAT. § 808.10 and
RULE 809.62.

Appeal No. **2018AP2437**

**STATE OF WISCONSIN**

Cir. Ct. No. **2016CV192**

**IN COURT OF APPEALS
DISTRICT III**

SUPERIOR SILICA SANDS, LLC, INDIAN HARBOR INSURANCE
COMPANY AND CERTAIN UNDERWRITERS AT LLOYD'S,

PLAINTIFFS-APPELLANTS,

V.

HERMAN GRANT COMPANY, INC., COLUMBIA NATIONAL INSURANCE
COMPANY AND THE CINCINNATI INSURANCE COMPANY,

DEFENDANTS-THIRD-PARTY
PLAINTIFFS-RESPONDENTS,

V.

MARKET & JOHNSON, INC., THE PHOENIX INSURANCE COMPANY,
JEFFERIES V. ALSTON JR. D/B/A ALSTON EQUIPMENT COMPANY,
DEF INSURANCE COMPANY, ALSTON ENVIRONMENTAL COMPANY, INC.
D/B/A ALSTON EQUIPMENT COMPANY, GHI INSURANCE COMPANY,
LAMSTEX MATERIAL HANDLING, LLC AND JKL INSURANCE COMPANY,

THIRD-PARTY DEFENDANTS,

STATE FARM FIRE AND CASUALTY COMPANY,

INTERVENOR.

APPEAL from a judgment of the circuit court for Barron County: JAMES C. BABLER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Superior Silica Sands (Superior) contracted with Market & Johnson (M&J) to construct a dry sand processing plant in Barron, Wisconsin (the Barron Plant).  The parties' contract contained a limited remedy provision, which limited the damages Superior could recover from M&J and its subcontractors.  M&J, in turn, contracted with Herman Grant Company, Inc., (Herman Grant) to build a sand dryer for the Barron Plant.

¶2      Superior deemed the sand dryer to be deficient in several respects, and it ultimately commenced this lawsuit against Herman Grant and its insurers.  The circuit court granted Herman Grant's motion for a declaratory judgment and entered an order stating that, by virtue of the limited remedy provision, Superior was barred from "recovering damages for lost profits, repair costs, and loss adjustment and professional fees."  Superior then voluntarily dismissed its contract and tort claims against Herman Grant.

¶3      Superior now appeals, arguing the circuit court erroneously exercised its discretion by granting Herman Grant's declaratory judgment motion.

Herman Grant disagrees, and it also argues, in the alternative, that Superior's argument is moot because Superior voluntarily dismissed its contract and tort claims after the court granted Herman Grant's declaratory judgment motion. We reject Herman Grant's mootness argument. We agree with Herman Grant, however, that the court properly granted its declaratory judgment motion. We therefore affirm.[1]

## BACKGROUND

¶4      Superior is in the business of mining sand that is used in the hydraulic fracturing process (i.e., "fracking") to extract underground natural gas. In 2012, Superior entered into a "Design/Build Contract" with M&J for construction of the Barron Plant.

¶5      The Design/Build Contract contained a number of provisions that are relevant to the issues raised in this appeal. For instance, the Design/Build Contract provided that M&J could "subcontract portions of the Work to any Person without further approval by Owner."[2] The Design/Build Contract further provided that M&J was "solely responsible for the Work" and had "complete and sole responsibility" for its agents and subcontractors.

---

[1] In the alternative, Herman Grant argues the circuit court's ultimate dismissal of Superior's contract and tort claims should be affirmed because Herman Grant was entitled to summary judgment on those claims, for various reasons. We need not address this argument, as we affirm the circuit court's judgment on other grounds. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

[2] The Design/Build Contract defined the term "Work" to mean "the work and services required in connection with the engineering, design, procurement, dismantling, transportation, storage, refurbishment, construction, upgrade, installation, interconnection, commissioning, start-up, testing, permitting, training for operation, supervision, and project management of the Work" described in the contract, including any equipment and machinery "required for and related to the foregoing." The term "Owner" was defined to mean Superior.

¶6      The Design/Build Contract also contained a warranty provision, by which M&J warranted that the work would be "performed in accordance with the terms and conditions of this Contract" and would be "free from defects in design and workmanship."  The warranty provision further stated that, for a period of one year following the substantial completion of the work, M&J would re-perform any defective work and would repair or replace any defective equipment or materials, as long as Superior "deliver[ed] notice of an alleged deficiency or defect within a reasonable time after actual discovery thereof."  Such notice was required to be in writing and to be delivered in one of four specified ways.  The warranty provision in the Design/Build Contract also stated that M&J would "cause all Subcontractor warranties to be assignable to [Superior] upon the expiration of the Warranty Period."

¶7      The Design/Build Contract also contained a limitation of remedies provision, which stated the remedies set forth in the contract were "the sole and exclusive remedies of the Parties to this Contract for the liabilities of such Parties arising out of or in connection with the Work or this Contract, notwithstanding any remedy otherwise available at law or in equity."  The limitation of remedies provision further stated that neither M&J nor any subcontractor would be "liable for indirect, special, incidental, consequential or exemplary damages, including but not limited to, the loss of profits or revenue."

¶8      M&J subcontracted with Herman Grant to design and build a sand dryer that was to be incorporated into the Barron Plant.[3]  In a Purchase Order Agreement dated June 1, 2012, Herman Grant agreed to perform its work "in

---

[3] It is undisputed that Herman Grant qualifies as a subcontractor under the Design/Build Contract's definition of that term.

4

accordance with the Prime Contract between [M&J] and [Superior] and all Plans, Drawings and Specifications including General and Special Conditions and Addenda." It is undisputed that no direct contract exists between Herman Grant and Superior. It is further undisputed that the Purchase Order Agreement contains no warranties and that Herman Grant did not elsewhere provide any warranty regarding its work to either M&J or Superior.

¶9 Work on the Barron Plant was substantially completed in January 2013. The parties agree that Superior began having problems with the sand dryer almost immediately thereafter, but they disagree about the cause of the problems. Superior contends that the sand dryer was defective in multiple ways and failed to meet the performance requirements set forth in the Design/Build Contract. Herman Grant, in turn, asserts that Superior operated the sand dryer in ways that were contrary to the dryer's specifications.

¶10 Superior contends that it provided Herman Grant with notice of the problems with the sand dryer long before the one-year warranty period set forth in the Design/Build Contract expired in January 2014. In response, however, Herman Grant asserts there is "no evidence [Superior] ever provided M&J with the written 'Notice' required by the Design/Build Contract to start a warranty claim."

¶11 Superior ultimately paid to have some parts of the sand dryer repaired or replaced. Then, in December 2014, M&J paid Industrial Kiln & Dryer Group to perform further repairs to the sand dryer at no cost to Superior. Industrial Kiln performed those repairs from December 11 through December 15, 2014, and the Barron Plant was completely shut down during that time. Superior contends that it suffered at least $4,001,813.97 in damages as a result of the defective sand dryer

and Herman Grant's refusal to repair it, including: $3,651,246.52 in lost profits; $284,055 in repair costs; and $66,512.45 in "loss adjustment and professional fees."

¶12 Superior and its insurers—Indian Harbor Insurance Company and Certain Underwriters at Lloyd's—ultimately filed the instant lawsuit against Herman Grant and its insurers—Columbia National Insurance Company and The Cincinnati Insurance Company.[4] Superior asserted claims against Herman Grant for breach of contract, breach of the implied warranties of merchantability and fitness for a particular purpose, negligence, and unjust enrichment. Herman Grant subsequently asserted third-party claims against M&J (and others) for contribution and indemnification.

¶13 On July 26, 2017, Herman Grant moved for a declaratory judgment, seeking a declaration that the Design/Build Contract barred Superior from recovering damages for lost profits, repair costs, and loss adjustment and professional fees from Herman Grant. Herman Grant's motion merely sought a declaration as to whether Superior could recover the above categories of damages. It did not ask the circuit court to dismiss any of Superior's claims.

¶14 In response, Superior asked the circuit court to treat Herman Grant's motion as a motion for summary judgment because Herman Grant's "requested relief would operate as a dismissal of [Superior's] claims." Superior also argued that the court should deny Herman Grant's motion. It asserted that WIS. STAT. ch. 402—part of the Uniform Commercial Code (UCC)—indisputably applied to

---

[4] Indian Harbor and Lloyd's had paid for some of Superior's losses and therefore asserted subrogated interests in Superior's claims against Herman Grant. Superior asserted claims against Columbia and Cincinnati under the direct action statute, WIS. STAT. § 632.24 (2017-18).

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

the Purchase Order Agreement between Herman Grant and M&J, and that Superior was a third-party beneficiary of that agreement. As such, Superior argued ch. 402 also applied to the Design/Build Contract. Superior then contended that the limited remedy set forth in the Design/Build Contract failed of its essential purpose and was therefore unenforceable under WIS. STAT. § 402.719(2).

¶15 On November 3, 2017, the circuit court entered a written decision granting Herman Grant's declaratory judgment motion. The court concluded WIS. STAT. ch. 402 did not apply to the Design/Build Contract between Superior and M&J. The court also assumed without deciding that Superior was "a third-party beneficiary of Herman Grant's purchase order agreement with [M&J] and, therefore, [had] 'contractual privity' to assert claims against Herman Grant." Regardless, the court concluded that the waiver of consequential damages in the Design/Build Contract precluded Superior from obtaining any consequential damages from Herman Grant, and that the remedies set forth in the Design/Build Contract were the "sole and exclusive remedies" available to Superior.

¶16 Superior moved for reconsideration of the circuit court's November 3 decision, arguing "[t]he existence of the consequential damage waiver in the design/build contract does not answer the legal question put before the Court." Superior explained:

> [B]ecause the Purchase Order is governed by the UCC (even if the design/build contract is not), and because [Superior] is asserting direct claims as a third-party beneficiary of the Purchase Order, [Superior] is entitled to the protections and remedies provided under the UCC for breach of contract claims. This includes WIS. STAT. § 402.719, which invalidates a limited remedy provision when it "fail[s] of its essential purpose." The fact-intensive analysis of determining whether the limitations of liability as applied to Herman Grant failed of its essential purpose was not undertaken by this Court, nor could it have been

accomplished since Herman Grant[']s motion papers did not even include a statement of (allegedly) undisputed facts.

¶17 On March 16, 2018, the circuit court issued both a written decision denying Superior's reconsideration motion and an order granting Herman Grant's declaratory judgment motion. The court reasoned that WIS. STAT. § 402.719 "does allow contractual modification or limitation of remedies" and thus "does not preclude the limitations in the design/build contract." The court further reasoned there was "no evidence" supporting Superior's contention that the limited remedy in the Design/Build Contract failed of its essential purpose under § 402.719(2). The court explained:

> [T]he design/build contract granted [Superior] a one-year warranty period to take action against the general contractor [M&J] and [Superior] did not do so. This Court specifically asked [Superior] why no action was taken and the response was "that's not legally relevant." [Superior] never showed any evidence as to why [it] could not have complied with the warranty requirements of the design/build contract or why it was impossible for [Superior] to bring [its] suit regarding warranties within the time scheduled in the design/build contract.

(Footnote omitted.) The court's order declared that Superior was "barred from recovering damages for lost profits, repair costs, and loss adjustment and professional fees against Herman Grant" and its insurers.

¶18 After the circuit court granted Herman Grant's declaratory judgment motion, Columbia—one of Herman Grant's insurers—filed a motion for declaratory and/or summary judgment. Columbia argued, in part, that its policies did not provide coverage for Superior's claims against Herman Grant. Columbia also argued, however, that Superior's claims should be dismissed because Superior "cannot recover any of its claimed damages [from] Herman Grant." Specifically, Columbia argued that: (1) Superior could not prevail on its contractual claims

8

because, based on the court's prior declaratory judgment ruling, Superior had "no recoverable damages" with respect to those claims; (2) because Superior had "affirmed the Design/Build Contract and pursued contract damages," it was barred from "pursu[ing] an equitable claim like … unjust enrichment"; and (3) Superior's negligence claim was barred by the economic loss doctrine. Herman Grant and its other insurer—Cincinnati—subsequently joined that portion of Columbia's motion seeking dismissal of Superior's claims.

¶19 Superior did not file a response to Columbia's motion for declaratory and/or summary judgment. Instead, on July 18, 2018—before the circuit court ruled on Columbia's motion—Superior filed a notice of voluntary dismissal regarding its unjust enrichment claim. The notice stated it was "for the purpose of perfecting [Superior's] appeal of the Court's November 3, 2017 Decision, the Court's March 16, 2018 Order Granting Motion for Declaratory Judgment, and the Court's March 16, 2018 Decision which held, as a matter of law, that [Superior] could not recover any of [its] claimed damages" on its contract and tort claims.

¶20 On the same day, Superior also filed a "Notice of Motion and Motion for Entry of Final Judgment," which "move[d] the Court for entry of a final order or judgment" in favor of Herman Grant and its insurers on Superior's contract and tort claims "for purposes of appeal under WIS. STAT. § 808.03(1)." In its accompanying brief, Superior explained:

> This Court has ruled that there are no damages recoverable on any of the remaining causes of action being pursued by Plaintiffs. Accordingly, since absent any recoverable damages those causes of action are no longer valid, final judgment should be entered in favor of Defendants Herman Grant Company, Inc., The Cincinnati Insurance Company and Columbia National Insurance Company … on [Superior's contract and tort claims]. The Court's prior Orders which held as a matter of law that [Superior has] no recoverable damages would thereby become immediately

9

appealable as a matter of right pursuant to WIS. STAT. § 808.03(1).

(Footnotes omitted.)

¶21     In response, Herman Grant did not oppose the entry of a final judgment dismissing all of Superior's claims with prejudice; however, it questioned whether Superior was seeking voluntary dismissal under WIS. STAT. § 805.04(2) or summary judgment under WIS. STAT. § 802.08.  If the latter, Herman Grant stated it "would like the Court's Order, the court record, or both to reflect that Herman Grant … would be entitled to judgment dismissing [Superior's] claims as a matter of law for reasons <u>other than</u> the November 3, 2017, Decision and the arguments advanced by [Superior's] 'Motion for Entry of Final Judgment.'" Herman Grant then set forth various alternative reasons why it believed it was entitled to summary judgment on each of Superior's claims.

¶22     At a hearing on August 31, 2018, the circuit court concluded Superior was seeking voluntary dismissal under WIS. STAT. § 805.04(2), rather than summary judgment.   The parties debated whether Superior should have to reimburse Herman Grant's attorney fees and costs as a condition of dismissal, and the court ultimately found it unnecessary to predicate dismissal upon the payment of those fees.  The court then granted Superior's motion for the entry of a final judgment, and on November 13, 2018, it entered a final judgment dismissing Superior's contract and tort claims with prejudice.

¶23     Superior subsequently filed a notice of appeal from the circuit court's November 13, 2018 judgment.  In its notice of appeal, Superior asserted the court's "November [3], 2017 and March 16, 2018 Decisions and the Court's March 16, 2018 Order" held that Superior was barred from recovering the only damages it

sought from Herman Grant on its contract and tort claims. Superior further contended that, after the court entered its final judgment dismissing those claims with prejudice on November 13, 2018, the court's prior orders regarding damages "became appealable under WIS. STAT. [RULE] 809.10(4)."

¶24 Herman Grant moved for summary disposition of Superior's appeal, arguing that Superior had forfeited the right to challenge the circuit court's declaratory judgment rulings on appeal by voluntarily dismissing its unjust enrichment claim and then moving for the entry of a final judgment on its contract and tort claims. We denied Herman Grant's motion. We explained, "[T]he focus in these situations should be on whether, by its terms, a stipulated judgment turned a nonfinal, nonappealable judgment into a final, appealable judgment without truly bringing finality to the action." We continued, "Here, the circuit court's decision on consequential damages, whether it was labeled as a declaratory judgment or partial summary judgment, was in effect dispositive of the contract and tort claims. Once [Superior] had voluntarily dismissed its remaining equitable claim, there was nothing left to litigate in the circuit court."

## DISCUSSION

### I. Mootness

¶25 Before considering the merits of Superior's appellate arguments, we first address Herman Grant's assertion that the issues raised in this appeal are moot. Herman Grant argues that Superior's appellate arguments focus on the circuit court's nonfinal order granting Herman Grant's declaratory judgment motion. Herman Grant contends Superior does not "seek any review or reversal of the Final Judgment dismissing six of [its] seven claims with prejudice in November 2018, nor [does it] seek relief from [its] voluntary dismissal of the seventh claim in July 2018."

11

(Record citations omitted.) Because Superior's "claims of error are limited to the non-final Declaratory Judgment entered in March 2018," and because that judgment "only impacted claims [Superior] later dismissed with prejudice," Herman Grant asserts Superior's arguments that the court erred by granting the declaratory judgment are moot, and any error by the court in doing so was harmless.

¶26    Appellate courts generally decline to address moot issues. *PRN Assocs. LLC v. DOA*, 2009 WI 53, ¶29, 317 Wis. 2d 656, 766 N.W.2d 559. "An issue is moot when its resolution will have no practical effect on the underlying controversy." *Id.*, ¶25. In addition, an appellate court will not reverse a judgment based on a harmless error—that is, an error that did not "affect[] the substantial rights of the party seeking to reverse or set aside the judgment." WIS. STAT. § 805.18(2).

¶27    We conclude Superior's appellate arguments are not moot, and the voluntary dismissal of Superior's remaining claims did not render harmless any error the circuit court may have committed in granting Herman Grant's declaratory judgment motion. As we noted in our prior order denying Herman Grant's motion for summary disposition of this appeal, the circuit court's order granting the declaratory judgment motion was, in effect, "dispositive of [Superior's] contract and tort claims," as it barred Superior from recovering any of its claimed damages. Nonetheless, the order granting the declaratory judgment motion was not a final order, as it did not dismiss any of Superior's contract and tort claims and did not have any effect on Superior's unjust enrichment claim. Consequently, Superior could not appeal the declaratory judgment order as of right. *See* WIS. STAT. § 808.03(1).

¶28   After the circuit court granted Herman Grant's declaratory judgment motion, Superior voluntarily dismissed its unjust enrichment claim. Then, for the express purpose of expediting its ability to seek review of the court's declaratory judgment decision, Superior asked the court to enter a final judgment in favor of Herman Grant on its remaining contract and tort claims.[5] The court granted that motion, recognizing that there "wasn't much left of the case" after its ruling on Herman Grant's declaratory judgment motion.

¶29   On these facts, Herman Grant cannot show that our resolution of the issues raised in Superior's appeal "will have no practical effect on the underlying controversy." *See PRN Assocs.*, 317 Wis. 2d 656, ¶25. If we were to reverse the circuit court's final judgment dismissing Superior's contract and tort claims on the ground that the court erred by granting Herman Grant's declaratory judgment motion, we would remand for further proceedings on those claims. Thus, our decision would have a "practical effect" on the outcome of this case. *See id.* In addition, any error that the circuit court made in granting the declaratory judgment motion affected Superior's "substantial rights," as the declaratory judgment prohibited Superior from recovering any of its claimed damages on its contract and tort claims, thus essentially disposing of those claims. *See* WIS. STAT. § 805.18(2).

¶30   Under these circumstances, any error by the circuit court in granting Herman Grant's declaratory judgment motion was not harmless, and Superior's appeal challenging the court's declaratory judgment ruling is not moot. We therefore proceed to address the merits of Superior's argument that the court erred

---

[5] *See* WIS. STAT. RULE 809.10(4) ("An appeal from a final judgment or final order brings before the court all prior nonfinal judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon.").

13

by granting the declaratory judgment motion and holding that the limited remedy provision of the Design/Build Contract barred Superior from recovering any of its claimed damages on its contract and tort claims.

## II. Declaratory judgment

¶31    Whether to grant or deny a declaratory judgment is committed to the circuit court's discretion, and we will not reverse unless the court erroneously exercised its discretion.[6] *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶35, 309 Wis. 2d 365, 749 N.W.2d 211.   Where the court's decision to grant or deny a declaratory judgment motion turns upon a question of law, however, we independently review that legal question. *Gulmire v. St. Paul Fire & Marine Ins. Co.*, 2004 WI App 18, ¶10, 269 Wis. 2d 501, 674 N.W.2d 629 (2003).

¶32    Here, the circuit court's decision on Herman Grant's declaratory judgment motion turned on its interpretation of both the Design/Build Contract between M&J and Superior and the Purchase Order Agreement between M&J and Herman Grant.  The interpretation of a contract presents a question of law that we review independently. *Marx v. Morris*, 2019 WI 34, ¶20, 386 Wis. 2d 122, 925 N.W.2d 112, *reconsideration denied*, 2019 WI 84, 388 Wis. 2d 652, 931 N.W.2d 538.  When interpreting a contract, our aim is to determine and give effect to the parties' intentions, and we presume those intentions are expressed in the language of the contract. *Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 2012 WI 70, ¶21, 342 Wis. 2d 29, 816 N.W.2d 853.   "Where the language of a contract is

---

[6] A court must be presented with a justiciable controversy before it may exercise its jurisdiction over a declaratory judgment claim. *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶28, 309 Wis. 2d 365, 749 N.W.2d 211.  Our case law sets forth four factors that must be satisfied for a declaratory judgment claim to be justiciable. *Id.*, ¶29.  It is undisputed that those factors are satisfied in this case, and we therefore do not address them further.

unambiguous and the parties' intentions can be ascertained from the face of the contract, we give effect to the language they employed." *Id.*

¶33    "An award of damages for a breach of contract should compensate the injured party for the losses that stem from the breach." *Champion Cos. of Wis. v. Stafford Dev., LLC*, 2011 WI App 8, ¶10, 331 Wis. 2d 208, 794 N.W.2d 916 (2010). Such compensation includes direct damages, which can be measured in multiple ways.  For instance, an aggrieved buyer may be entitled to recover the cost to repair a defective product, or, alternatively, to the difference between the value of the product as promised and its value as actually delivered.  *See id.*, ¶12.  In addition to such direct damages, an aggrieved buyer may also be entitled to recover "incidental and consequential damages for breach of contract." *Kramer v. Board of Educ. of Sch. Dist. of Menomonie Area*, 2001 WI App 244, ¶11, 248 Wis. 2d 333, 635 N.W.2d 857.

¶34    Notwithstanding the general availability of these damages, parties to a contract may agree to limit the available remedies for a breach.  "When a contract specifies remedies available for breach of contract, the intention of the parties generally governs." *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2010 WI 44, ¶37, 324 Wis. 2d 703, 783 N.W.2d 294.  "Commercial parties, presumably of equal bargaining power, are generally free to set terms of their own agreement, including warranties, disclaimers, and limitation of remedies." *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 407, 573 N.W.2d 842 (1998).

¶35    In this case, Superior's contract and tort claims sought to recover three categories of damages from Herman Grant:  lost profits, the cost to repair the sand dryer, and loss adjustment and professional fees.  We agree with the circuit court

that the Design/Build Contract expressly prohibits Superior from recovering each of these categories of damages.

¶36     First, § 28.2 of the Design/Build Contract states that neither M&J nor any subcontractor "shall … be liable for indirect, special, incidental, consequential or exemplary damages, including but not limited to, the loss of profits or revenue." This provision unambiguously bars Superior from recovering lost profits from Herman Grant—a proposition that Superior does not dispute on appeal.

¶37     Section 28.2 of the Design/Build Contract also bars Superior from recovering its claimed loss adjustment and professional fees. Those damages are for amounts that Superior's insurers paid to Willis North America, Inc., a risk management and risk services company. Herman Grant asserts—and Superior does not dispute—that those payments qualify as incidental damages because they were made in connection with Superior's insurance claims, which, in turn, "resulted from the contract/warranty breaches at issue." As such, Superior does not dispute that Section 28.2 of the Design/Build Contract unambiguously bars it from recovering incidental damages from Herman Grant.

¶38     Section 28.2 of the Design/Build Contract does not bar Superior from recovering the cost to repair the sand dryer. Nevertheless, other provisions of the Design/Build Contract prevent Superior from recovering those damages from Herman Grant.

¶39     Specifically, § 28.1, entitled "Remedies Exclusive," expressly provides that the remedies set forth in the Design/Build Contract are intended to be the parties' "sole and exclusive remedies ... for the liabilities of such Parties arising out of or in connection with the Work or this Contract, notwithstanding any remedy otherwise available at law or in equity." The Design/Build Contract further provides

that: (1) while M&J may subcontract portions of the work, it remains "solely responsible for the Work" and has "complete and sole responsibility as principal" for its subcontractors; (2) M&J warranted that the work would be "free from defects in design and workmanship"; and (3) for a period of one year following the substantial completion of the work, M&J would re-perform any defective work and would repair or replace any defective equipment or materials. Although the Design/Build Contract also states that M&J will assign all subcontractor warranties to Superior after the expiration of the one-year warranty period, it is undisputed that Herman Grant did not provide any warranty for the sand dryer to either Superior or M&J.

¶40     The above provisions of the Design/Build Contract unambiguously establish that M&J was solely responsible for the work on the Barron Plant and warranted that such work would be free from defects, and that Superior's sole remedy for any defects in the Barron Plant was M&J's promise to repair or replace any defective work, equipment, or materials within one year of substantial completion. Taken together, these provisions bar Superior from recovering any repair costs from Herman Grant.

¶41     In an attempt to avoid this result, Superior argues that the limited remedy set forth in the Design/Build Contract failed of its essential purpose, and the contract's limited remedy provision is therefore unenforceable. Superior relies on the UCC—specifically, WIS. STAT. § 402.719(2), which states that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in chs. 401 to 411." This argument fails because WIS. STAT. ch. 402 applies only to transactions in "goods," meaning "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." WIS. STAT. §§ 402.102, 402.105(1)(c).

17

There is no dispute that the subject of the Design/Build Contract—i.e., a fully operational dry sand processing plant—is not a "movable" good. As such, ch. 402 does not apply to the Design/Build Contract, and Superior cannot rely on § 402.719(2) to argue that the limited remedy provision in that contract is unenforceable.

¶42 Superior does not argue that WIS. STAT. ch. 402 directly applies to the Design/Build Contract. Instead, Superior contends that ch. 402 applies to the Purchase Order Agreement between M&J and Herman Grant. Superior acknowledges that it is not a party to the Purchase Order Agreement, but it argues it is a third-party beneficiary of that agreement. Superior further contends that the limited remedy provision in the Design/Build Contract was "made part of the Purchase Order [Agreement]," and ch. 402 therefore applies to the limited remedy provision.

¶43 Assuming without deciding that WIS. STAT. ch. 402 applies to the Purchase Order Agreement and that Superior is a third-party beneficiary of that agreement, we nevertheless reject Superior's assertion that the Purchase Order Agreement incorporates the Design/Build Contract's limited remedy provision. The Purchase Order Agreement merely states that Herman Grant must perform its work "in accordance with the Prime Contract [i.e., the Design/Build Contract] between [M&J] and [Superior] and all Plans, Drawings and Specifications including General and Special Conditions and Addenda." Thus, while the Purchase Order Agreement requires Herman Grant to perform its work according to the specifications in the Design/Build Contract, it does not incorporate any other provisions of the Design/Build Contract. We therefore reject Superior's argument that ch. 402 applies to the Design/Build Contract by virtue of the Purchase Order Agreement.

18

Because ch. 402 does not apply to the Design/Build Contract, Superior cannot argue that the limited remedy provision is unenforceable under WIS. STAT. § 402.719(2).[7]

¶44 Finally, Superior argues that the circuit court erred by stating in its written decision granting Herman Grant's declaratory judgment motion that Superior had not showed "any evidence as to why … it was impossible for [Superior] to bring [its] suit regarding warranties within the time scheduled in the design/build contract." Superior argues the court's statement was "clear error"

---

[7] The circuit court concluded Superior did not establish that the limited remedy set forth in the Design/Build Contract failed of its essential purpose because there was no evidence that Superior had availed itself of that remedy during the one-year warranty period. On appeal, Superior argues there is a factual dispute regarding that issue because it "presented considerable evidence showing that it notified [M&J] and Herman Grant, both verbally and in writing, that the Sand Dryer was not working properly during the one-year warranty period."

None of the evidence cited by Superior shows that it provided written notice of any defects in the sand dryer to M&J or Herman Grant in the manner required by the Design/Build Contract. Nonetheless, Superior argues it "was not even required to provide notice during the one-year period to preserve its rights," as the full text of the notice provision states:

> Contractor's warranty obligations and liabilities are conditioned on Owner's delivering notice of an alleged deficiency or defect within a reasonable time after actual discovery thereof by Owner; *provided, however, that Owner's failure to give such notice during such period shall not relieve Contractor of its warranty obligations and liabilities except to the extent Contractor is prejudiced by such failure*.

(Emphasis added.)

In light of our conclusion that WIS. STAT. ch. 402 does not apply to the Design/Build Contract, we need not address the parties' arguments regarding whether Superior provided M&J and Herman Grant with sufficient notice of the alleged defects in the sand dryer. In addition, we choose not to do so because the parties did not raise any arguments in the circuit court regarding whether either M&J or Herman Grant was prejudiced by Superior's failure to provide the notice specified in the Design/Build Contract. Moreover, the parties do not develop any arguments regarding prejudice on appeal. We will not abandon our neutrality to develop such arguments for the parties. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.

because the Design/Build Contract "does not contain a contractual suit limitations period, it only contains a warranty period."

¶45     We agree the circuit court's wording gives the impression that it erroneously believed suit had to be commenced during the one-year warranty period set forth in the Design/Build Contract. The interpretation of a contract, however, is a question of law that we review independently. *See **Marx***, 386 Wis. 2d 122, ¶20. Our analysis, as set forth above, does not rely on any misperception that the Design/Build Contract required Superior to file suit within a certain time. What could be interpreted as the circuit court's misstatement to that effect is therefore immaterial.

> *By the Court.*—Judgment affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.